## GRAYSON ET AL. *v.* HARRIS ET AL.

ERROR AND CERTIORARI TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 187. Argued January 16, 1925.—Decided March 2, 1925.

1. Judgment held reviewable by certiorari and not by writ of error. P. 353.
2. Paragraph 6 of the Supplemental Creek Agreement, confirmed by Act of June 30, 1902, c. 1323, 32 Stat. 500, declares that descent and distribution of land and money provided by Act of March 1, 1901, c. 676, 31 Stat. 861, shall be in accordance with c. 49 of Mansfield's Digest of the Statutes of Arkansas, in force in the Indian Territory, but contains provisos, (a) that only citizens of the Creek Nation and their Creek descendants shall inherit lands of the Creek Nation, but (b) that, if there be no person of Creek citizenship to take descent, then the inheritance shall go to non-citizen heirs in the order named in said chapter 49. *Held,*

That the preferred right of Creek citizens to inherit Creek allotted lands applies not only to inheritance immediately from the original allottee but also in subsequent stages of devolution, so that where an allotment made originally in the names of deceased Creek freedmen was inherited from them by an heir who was a Creek citizen, upon her death it descended to her more remote kindred, who were Creek citizens, in preference to her next of kin who was neither a Creek citizen nor a descendant of a Creek citizen. P. 355.

3. Where the state court decided as a pure matter of fact that plaintiffs were Creek citizens, but by error of law denied them their resultant federal right to preference in inheritance of Creek lands, *held*, that the finding of fact was not so related to the denial of federal right as to be reëxaminable in this Court.  P. 357.

4. The rule that, when the decision of a state court may rest upon a non-federal ground adequate to support it, this Court will not take jurisdiction to determine the federal question, has no application where the non-federal ground might have been considered by the state court, but was not.  P. 358.

90 Okla. 147 reversed.

ERROR and certiorari to a decree of the Supreme Court of Oklahoma which reversed a decree in favor of Grayson et al. in their suit to recover an interest in a Creek Indian allotment and for an accounting for oil and gas extracted from it.

*Mr. Robert M. Rainey,* with whom *Messrs. Streeter B. Flynn, William Neff, Lewis. E. Neff, Jess W. Watts* and *Charles G. Watts,* were on the briefs for petitioners.

*Mr. Robert F. Blair,* for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought in a state court of Oklahoma to determine title to an undivided half interest in certain lands in that state lying within the former Creek Nation. The case is here both on error and certiorari.  263 U. S. 696.  The latter is the appropriate remedy, and the writ of error will be dismissed.

Defendants in error claim title through one Cloria Grayson, and it is admitted that they acquired by mesne conveyances, and have, whatever title she had.  The lands were originally allotted in the names of two freedmen, citizens of the Creek Nation, who had died prior to the allotment, leaving Gertrude Grayson and another as

42684°—25——23

their only Creek heirs at law; and ownership of an undivided half interest in the lands passed to each of them. Gertrude Grayson died intestate and without issue in 1907, leaving as her next of kin her maternal grandmother, Cloria Grayson, who was not a Creek citizen nor a descendant of a Creek citizen, and these plaintiffs in error, remote kindred in various degrees, all of whom were Creek citizens. This was prior to the admission of Indian Territory and the Territory of Oklahoma as the State of Oklahoma, and by the Act of May 2, 1890, c. 182, 26 Stat. 81, 95, § 31, the general law in force in Indian Territory in respect of descents and distributions was chapter 49 of Mansfield's Digest of the Statutes of Arkansas. If this law applies, it is conceded that Cloria Grayson succeeded to the half interest of Gertrude Grayson as her sole heir at law; in which event title of defendants in error is good and plaintiffs in error have no. case. The contention on behalf of plaintiffs in error, however, is that the rights of the parties are controlled by the provisos found in paragraph 6 of the supplemental Creek agreement, ratified and confirmed by the Act of June 30, 1902, c. 1323, 32 Stat. 500, 501, as follows:

" 6. The provisions of the act of Congress approved March 1, 1901 (31 Stat. L., 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: *Provided,* That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: *And provided further,* That if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

'In addition to claim of title, defendants in error denied
that plaintiffs in error were Creek citizens and alleged in
bar adverse possession of the lands for the applicable
statutory period. The trial court found for plaintiffs in
error on all issues and rendered a decree in their favor.
Upon appeal the state supreme court reversed the decree,
upon the assumption that the provisos in paragraph 6
related only to the devolution of the allotment from the
allottee—that is, the first succession—and that, since Ger-
trude Grayson was not the allottee but inherited her half
interest by operation of law, the provisos had no applica-
tion. 90 Okla. 147. The effect of this ruling was to read
into the provisos a limitation which plainly is not there,
apparently induced by the belief that a literal interpreta-
tion would lead to absurd and unwise results.

The conclusion is not in accord with the prior views of
this court, to which the state supreme court gave no con-
sideration. In *Washington* v. *Miller,* 235 U. S. 422, it
was held that the proviso, that only citizens of the Creek
Nation and their Creek descendants should " inherit lands
of the Creek Nation," looked to the future as well as to
the present. The theory had been advanced that lands
which had passed into private ownership were no longer
lands of the tribe (that is to say, no longer " lands of the
Creek Nation ") and, therefore, not within the words of
the proviso. Answering that theory this court said (p.
427): " We think the words indicated were merely de-
scriptive of the body of lands which were being allotted
in severalty and subjected to the incidents of individual
ownership, that is, the lands in the Creek Nation. In
that sense they would include the lands as well after
allotment as before. The section as a whole shows that it
looked to the future no less than to the present, and was
intended to prescribe rules of descent applicable to all
Creek allotments. Nothing in the provisos indicates that
they were to be less comprehensive. Their purpose was to

give Creek citizens and their Creek descendants a preferred right to inherit, and no reason is perceived for giving such a preference where a citizen entitled to an allotment died before receiving it that would not be equally applicable if he had died after it was received." In the present case stress is laid by defendants in error upon the use of the word " allotments " in the phrase " to prescribe rules of descent applicable to all Creek allotments," and it is insisted that the court meant thereby to limit the operation of the proviso to lands in their descent from the allottee and not thereafter. The word was not used in that restricted sense, but in the broader sense which includes all Creek lands which had gone through the process of allotment.

The purpose and policy of the provisos rest upon tribal rather than family sentiment, a sentiment which put the interests of the tribe above those of the family, and regarded the claims which spring from tribal membership rather than those arising from close degrees of kinship. This view is expressed in the later case of *Campbell* v. *Wadsworth,* 248 U. S. 169, 175, dealing with the Seminole agreement of 1899. Under the provision in that agreement, that if any member of the tribe die after enrollment the lands, etc., to which he would be entitled if living " shall descend to his heirs who are Seminole citizens," it was held that the lands of an Indian, enrolled as a Seminole, did not descend to his wife and daughters, enrolled only as Creeks. Answering the position of the state supreme court that only " the most powerful and impelling reasons " could induce it to hold that the Indians intended to exclude their own children from sharing in their property after death, this court said: " While it is true that it seems unnatural for the Indians to have preferred more distant relatives to their own children in providing for the descent and distribution of their property, yet from the terms of the act before us, and also

from the provisions of the Supplemental Creek Agreement
that ' only citizens of the Creek Nation, male and female,
and their Creek descendants shall inherit lands of the
Creek Nation ' (32 Stat. 500), it is clear that with the In-
dians the interests of the tribe were paramount to those
of the family and it was with a knowledge of the mode of
life of their primitive people, better and more intimate
than the courts can now command, that they determined
that this paramount purpose would best be served by
giving to children born of mixed marriages the tribal
status of their mother."

The lands of the Creek Nation were tribal lands and
the evident purpose of the Indians was to continue at
least a semblance of that status so far as it could be done
consistently with their distribution in severalty. With the
wisdom of that purpose we have nothing to do. It is
enough that Congress respected it and gave to it the sanc-
tion of law.

On behalf of defendants in error, it is asserted: (1) that
there was an entire absence of proof that plaintiffs in
error are citizens of the Creek Nation, and we are asked
to review the record in that respect in order to determine
whether there was any basis for the claim of federal right;
and (2) that an examination of the record will show that
the plea of the statute of limitations was fully established
and, therefore, the decision of the state supreme court
reasonably may be affirmed on that non-federal ground.

The point that the evidence fails to show that plaintiffs
in error were Creek citizens presents a pure question of
fact. The trial court found they were. The state supreme
court expressly affirmed the finding, and, recognizing the
existence of the federal question in the case, put its de-
cision denying the federal right upon an erroneous view
of the law. The denial was not the result of the finding
of fact, nor is that finding so intermingled with the con-
clusion of law in respect of the federal right as to cause

it to be necessary to consider the matter of fact in order to pass upon the federal question. See *Aetna Life Ins. Co. et al.* v. *Dunken,* 266 U. S. 389; *Truax* v. *Corrigan,* 257 U. S. 312, 324–325, and cases cited; *Nor. Pac. Ry.* v. *North Dakota,* 236 U. S. 585, 593; *Creswill* v. *Knights of Pythias,* 225 U. S. 246, 261; *Kansas City So. Ry.* v. *Albers Comm. Co.,* 223 U. S. 573, 591. The effect of the finding was to establish the existence of a preliminary fact, related to the federal right only in the sense that it brought the case within the reach of the federal law relied on and called for a determination of the federal question then presented. In other words, the finding simply established a condition, not as a basis upon which to rest a decision of the question of federal right one way or the other, but upon which that question became an issue for consideration and determination. In such case, the ordinary rule applies that the decision of the state court upon a question of fact can not be made the subject of inquiry here. *Telluride Power Co.* v. *Rio Grande, etc. Ry.,* 175 U. S. 639, 645; *Illinois* v. *Economy Power Co.,* 234 U. S. 497, 523–524; *Dower* v. *Richards,* 151 U. S. 658, 668, *et seq.; Crary* v. *Devlin,* 154 U. S. 619; *Egan* v. *Hart,* 165 U. S. 188, 192; *Carpenter* v. *Williams,* 9 Wall. 785, 786.

Nor need we inquire into the defense of the statute of limitations. The decision now under-review entirely ignores it. The rule that, when the decision of a state court may rest upon a non-federal ground adequate to support it, this court will not take jurisdiction to determine the federal question, has no application where, as here, the non-federal ground might have been considered by the state court but was not. *Rogers* v. *Hennepin County,* 240 U. S. 184, 188–189; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 608.

It is said that in an earlier opinion the state supreme court ruled in favor of defendants in error upon the two points last discussed. But that opinion, it appears, was

withdrawn and the present decision, rendered after a rehearing, is the only one open to our consideration. The decree of the state supreme court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Writ of error dismissed.*
*Decree reversed.*