HARRIS et al. v. GRAYSON et al.

No. 11654. Opinion Filed Dec. 2, 1930.

Robt. F. Blair, Geo. S. Ramsey, Alvin Richards, G. Earl Shaffer, J. G. Ralls, and Lydick, McPherren & Wilson, for plaintiffs in error.

Watts & Watts, Gidney & Gidney, W. T. Hunt, Turner & Turner, Rainey & Flynn, A. C. Hunt, Calvin Jones, Wallace & Stevens, Thos. H. Owen, J. T. Smith, A. A. Hatch, Alvin F. Molony, and John E. Williams, for defendants in error.

ANDREWS, J. This suit was originally filed on the 4th day of August, 1917, in the district court of Creek county by Isom Grayson et al., as plaintiffs, against James A. Harris et al., as defendants, to recover an undivided one-half interest in two tracts of land allotted to Nancy Colbert and Garfield Colbert, freedman citizens of the Creek Nation.

After the issues were made up the case came on for trial before the court, a jury having been waived, and at the conclusion of the trial a finding of facts was made and judgment was rendered in favor of the plaintiffs, from which judgment the defendants appealed.

The parties hereto will be hereinafter re-

ferred to as they appeared in the trial court.

On the 19th day of December, 1922, this court, in an opinion by Mr. Justice Miller, reported in 129 Okla. 281, 264 Pac. 623, reversed the trial court and held that under the Arkansas seven-year statute of limitations (section 4471, Mansfield's Digest of the Laws of Arkansas, section 31 of the Act of May 2, 1890, chapter 182, 26 Statutes at Large 81, 94), that being the statute applicable hereto, the limitation for the commencement of the action began with the acquisition of title by plaintiffs. Plaintiffs' petition for rehearing was granted on May 29, 1923, and on the same date this court, in a per curiam opinion, 90 Okla. 147, 216 Pac. 446, reversed the trial court and held that the Supplemental Creek Agreement of June 30, 1902, 32 Statutes at Large 500, controlled and confined the devolution of the allotment of a deceased Creek allottee on first descent to Creek citizens or their Creek descendants, that it was inapplicable on second descent of such allotment, and that the descent of such an allotment after the first descent was controlled by the applicable provisions of chapter 49, Mansfield's Digest of the Statutes of Arkansas. From this action an appeal was taken by the plaintiffs to the Supreme Court of the United States, which court, on the 2nd day of March, 1925, in an opinion by Mr. Justice Sutherland (Grayson et al. v. Harris et al., 267 U. S. 352, 69 L. Ed. 652, 45 Sup. Ct. Rep. 317), reversed this court and held that the Supplemental Creek Agreement controlled not only the first but subsequent descents. After the mandate of of the Supreme Court of the United States was spread of record in this court, a petition for rehearing was granted by this court and on the 15th day of November, 1927, this court, in an opinion by Mr. Justice Branson, 129 Okla. 285, 264 Pac. 627, refiled and readopted the opinion by Mr. Justice Miller, supra. The plaintiffs again appealed to the Supreme Court of the United States, which Court, in an opinion by Mr. Justice Sanford (Grayson et al. v. Harris et al., 279 U. S. 300, 73 L. Ed. 700, 49 Sup. Ct. Rep. 306), on the 8th day of April, 1929, reversed this court and held that the limitation under the provisions of Mansfield's Digest, section 4471, does not begin to run until plaintiff's action accrues. even though title has been previously acquired.

Upon the mandate of that court being spread of record in this court the defendants filed their motion and alleged that their third, fourth, fifth, seventh, eighth, ninth, eleventh, and twelfth assignments of error

in this court had never been decided by this court or by the Supreme Court of the United States, and prayed that this court take up, consider, and decide said assignments of error.

We agree with the plaintiffs that the opinion per curiam, supra, determined that the plaintiffs are Creek citizens. In that opinion it was said:

"The defendants in error, the plaintiffs below, were related to her, the degrees, etc., of which relationship it is unnecessary to discuss. They are citizens of the Creek Nation. * * *"

On appeal to the Supreme Court of the United States, that court, with reference to this question, said (267 U. S. 352) :

"The point that the evidence fails to show that plaintiffs in error were Creek citizens presents a pure question of fact. The trial court found they were. The state Supreme Court expressly affirmed the finding. * * *"

That question, having been determined, will not be further considered.

In our opinion the question of whether or not plaintiffs are barred by the statute of limitations has never been determined either by this court or the Supreme Court of the United States. Under the view taken by this court in the former opinions it was not necessary to determine that question. This court there held that the plaintiffs were barred by the statute of limitations because they had not commenced proceedings within seven years after they acquired their title. This court, being of that opinion as to the law, did not consider it necessary to and did not determine when the plaintiffs' right of action accrued. It appears from the opinion by Mr. Justice Sanford that the statute of limitations runs from the date the plaintiffs' action accrues. It now becomes necessary for this court to determine when the plaintiffs' action accrued. The plaintiffs contend that it was after November 16, 1907, and the defendants contend that it was prior to that date. If the possession of the defendants and their predecessors in possession tacks, then defendants' contention is tice Sanford said (279 U. S. 300) :

The trial court held that the defendants did not take possession of the land until sometime in 1912. That finding is attacked by the defendants. In the opinion Mr. Justice Sanford said (279 U. S. 300) :

"Upon the facts found by the trial court, —which were not questioned by the Supreme Court,—the plaintiffs' cause of action against the defendants did not accrue until that time. * * *"

It is apparent that this finding of the trial court, having been questioned by the defendants, and never having been settled by either this court or the Supreme Court of the United States, should now be considered.

In discussing the statute of limitations Mr. Justice Sanford said:

"While under some circumstances there may be a cause of action when the title is acquired, as where the land is then adversely held—obviously the mere acquisition of title cannot of itself give the owner of land a cause of action against persons who have not asserted an adverse claim under circumstances constituting an invasion of his justiciable rights."

The evidence is clear that the title of the plaintiffs' predecessor in title, a minor, was acquired on July 9, 1906. The plaintiffs' title was acquired by inheritance from that minor in April, 1907, on the death of the minor holder. If at the time of the acquisition of the title by the plaintiffs the land was adversely held, the plaintiffs' cause of action then accrued under the Arkansas statute of limitations, Id. If that adverse possession continued for a period of seven years from that time, the plaintiffs' action was barred thereby. Or if at any time prior to statehood and after the acquisition of title by the plaintiffs the land was held adversely to the rights of the plaintiffs, their cause of action then accrued under the Arkansas statutes of limitation, Id., and if that adverse possession continued for a period of seven years, the plaintiffs' right of action was barred thereby.

It is admitted that the defendants first entered upon the land in 1912. They contend that to the period of their occupancy should be added the period of the occupancy of Butte and Brann, which commenced prior to November 16, 1907, and that in doing so adverse possession of more than seven years will be shown.

Plaintiffs contend that:

"There was no privity, either of possession, contract, estate, or bloods existing between the parties to the compromise. The paternal and maternal titles claimed by the respective parties were not connected. In fact, there was no successive occupation, since the record nowhere shows that the plaintiffs in error succeeded Brann and his associates in the possession of the premises, if in truth it can be said that the latter ever were in the adverse possession thereof."

The record shows that the trial court refused to admit the deposition of George C Butte and James Brann, which had been offered by the defendants, for the purpose of showing that Brann and Butte, predecessors of defendants in possession, had transferred their possession to defendants and that the possession of Brann and Butte, coupled with that of the defendants, was sufficient in time to bar the rights of the plaintiffs. The record further shows that the trial court denied the offer in evidence of the defendants of quitclaim deeds from Butte and his associates and Brann to defendants. The record further shows that the trial court denied almost all, of not all, the evidence offered by the defendants to show possession prior to November 16, 1907, by George C. Butte and James Brann.

It appears from the record that the trial court rejected these offers of evidence on the theory advanced by the plaintiffs. That theory was expressed in the plaintiffs' brief in the following language:

"It cannot be said that the object of the compromise was the transfer of the title and possession of Brann and his associates or any part thereof to Bell and the plaintiffs in error, or that the transaction was followed by a transfer of the possession in fact. The record shows the contrary, since it appears that the only object of the compromise agreement was to fix and adjust the status of the parties as their respective rights were found to exist by the decree of July 31, 1911. There is no evidence that there was in fact a transfer of title and possession as a result of the transaction. The only object and the only effect of the transaction was to confirm Brann and his associates as the owners of the paternal inheritance, and to confirm Bell and the plaintiffs in error as the owners of the maternal inheritance. Neither acquired anything of the other by virtue of the compromise. The parties by mutual agreement merely confirmed their respective rights as fixed by the decree of July 31, 1911, and nothing more. There was no partition. There is neither pleading nor proof that Bell and the plaintiffs in error succeeded Brann and his associates in the actual possession of the lands or any part thereof—or that the land was actually partitioned between the parties."

It also appears from the offered evidence that Brann and Butte had acquired deeds to all of the land; that they, in good faith, thought that they owned all of the land; that defendants had acquired deeds to all of the land; that they, in good faith, thought that they owned all of the land; that Brann and Butte instituted a suit in the federal court against defendants in which they asserted title to all of the land; that in that suit defendants asserted title to all of the land and asked for an accounting for the oil taken therefrom by Brann and Butte;

that the federal court held that Brann and Butte were entitled to a one-half interest in the land and defendants were entitled to a one-half interest in the land and made an order of reference for an accounting; that an appeal from that judgment was contemplated and in settlement of the rights of the parties thereto a certain agreement was entered into which was approved by the federal court and judgment rendered accordingly; that defendants deeded to Brann and Butte a one-half interest in the land and Brann and Butte deeded to defendants a one-half interest in the land.

In our opinion the question at issue here must be determined from a consideration of the actions of the parties in that transaction.

The defendants contend that that agreement and the deeds issued in pursuance thereof constituted defendants the successors in interest of Brann and Butte, and by reason thereof the possession of defendants tacks with that of Brann and Butte. This the plaintiffs deny. They say:

"By the exchange of deeds, the ordinary effect of such deeds is nullified. Each deed operates to nullify the other, and in legal effect the result is the same as though no deeds had ever been exchanged. It follows naturally that there could be no privity between the parties and no connection of their respective title where, in legal effect, there was no actual conveyance, one to the other."

We do not consider it necessary to refer to all of the testimony, and will point out only sufficient instances to justify the judgment of this court. Among these we find the testimony of Mr. Butte in which he says:

"A. I went into possession under my deed and title from Jim and Missouri Colbert. Q. And none other? A. And continued in possession under that title until we acquired such additional rights as we got under the settlement that was made with Harris Brothers. (C.-M. 661.) Q. Then in compromising the suit in the federal court you divided fifty-fifty all such interest as had been acquired through the Jim Colbert deed? A. That is, we gave Harris half of our title and he gave us half of his. Q. That is, such title as you acquired under the Jim Colbert deed? A. Yes, sir. Of course the settlement in the Nancy Colbert allotment was made after the court here had adjudicated, in the case of Brann against Bell involving the Garfield Colbert allotment, that the two claimants owned a half interest each, and rather than just litigate the question we decided it would be best to compromise. (C.-M. 666.). Q. Mr. Butte, after the case of Brann against Bell in the federal court was finally determined, what did you gentlemen do with Bell and Harris Brothers toward settling the title of the Nancy Colbert allotment based upon the judgment and determination of the federal court in the Garfield Colbert case? A. We divided our titles half and half, fifty-fifty." (C.-M. 470.)

The judgment of Judge Campbell in the federal court decreed:

"* * * That the complainant, James Brann, is the owner of an undivided one-half (½) interest in fee in and to the said land above described, and that the defendants and cross-complainants, L. A. Bell, William H. Harris, and James A. Harris, are the owners of the other undivided one-half (½) interest in and to the said land in controversy; and

"It appearing that the complainant is entitled to have defendants' deeds declared clouds on his title to an undivided one-half interest, but to no more, and

"It appearing that the defendants, under their cross-bill, are entitled to recover of and from the complainant the possession to and the title in an undivided one-half (½) interest in and to said land,

"It is, therefore, ordered, adjudged, considered and decreed that all deeds and papers titles under which defendants claim title be, and the same are, hereby declared clouds on complainant's undivided one-half (½) interest in and to said land, and, as such, reformed and removed to this extent only, and

"It is further ordered, adjudged, considered and decreed that the plaintiff is the owner in fee of an undivided one-half (½) interest in and to said eighty (80) acres of land; and that the defendants are jointly the owners in fee of the other one-half (½) undivided interest and, as such joint owners of an undivided one-half interest, it is hereby ordered, adjudged, considered and decreed that the cross-complainants, said L. A. Bell, William H. Harris, and James A. Harris, have and recover of and from the complainant the possession to and title in one undivided one-half interest in and to the said land." (C.-M. 559-560.)

—and for an accounting by Brann to defendants for the oil taken from the land. Attention is called to the fact that under this decree the defendants recovered possession from Brann of an undivided one-half interest in the land.

There was considerable property involved in this case that was not involved in that litigation. After the judgment of the United States District Court, the parties to the suit entered into a stipulation, as follows:

"The plaintiff, James Brann, is hereby recognized and declared to be the owner of an undivided one-half interest in said land,

and the defendants and cross-complainants, L. A. Bell, James A. Harris, and William H. Harris, are hereby declared to be recognized as the owners and holders of the other undivided one-half interest in and to the land described." (C.-M. 551-2.)

It also provided that defendants should become the owners of an undivided one-half interest in

"* * * all tanks, derricks, casing, machinery, pipe lines, pumping outfits, engines, enginehouses, teams, stock, and every character of personal property now used in the operation of said land for oil and gas whether said personal property be attached to said land or not; and the said defendants and crosscomplainants, L. A. Bell, James A. Harris and William H. Harris, shall be the joint owners of the other one-half undivided interest in and to all the said machinery and appliances of every kind and character above said, and the joint owners of an undivided one-half interest of all the personal property placed upon said land by said James Brann in the exploration and operation of said property for oil and gas, including all machinery, casing, pipe lines, engine houses, engines, power plants, tanks, derricks, pumping stations, teams, and everything above said, wherein James Brann is declared to be an owner of an undivided one-half interest. And said James Brann shall be the owner of an undivided one-half interest in and to all oil procured from said land, and now on hand and unsold; and the defendants and cross-complainants, L. A. Bell, James A. Harris, and William H. Harris, shall be the joint owners of the other undivided one-half of all said oil produced from said land and unsold." (C.-M. 552-3.)

It was further provided:

"And, in consideration of the sum of thirty-seven hundred eight 76-100 dollars, cash in hand paid by James Brann to the defendants and cross-claimants, L. A. Bell, James A. Harris, and William H. Harris, do hereby waive and discharge any and all claims they have against plaintiff, James Brann, for an accounting on account of oil produced and sold from said land by James Brann, and on account of damages thereby. * * *" (C.-M. 553.)

In our opinion the statement of the witness as to the division of the land is supported by the record of the federal court.

This record discloses that whatever title Brann and Butte had to the land was divided with the defendants, and whatever title the defendants had was divided with Brann and Butte, and that under the judgment and decree of the court the defendants were entitled to possession with Brann and Butte.

There was some testimony tending to show that Brann and Butte were in possession of the land; that they had placed equipment on the land and had developed it for oil and gas; that they had sold oil and gas therefrom, and they had oil on hand and unsold; that the court decree had divided the tract of land in the suit, giving each an undivided interest therein and joint possession of that tract; that it had directed an accounting of the oil; that it had made no disposition of the personal property of Brann and Butte, and that it had made no disposition of the other tracts of land. The decision had not become final and an appeal was contemplated. The parties entered into the stipulation by which each was to deed to the other, not a half interest in the tract in suit alone, but a half interest in all of the land. The stipulation provided that Brann and Butte should convey to defendants a half interest in their personal property in which defendants had no interest and in which the decree had given them no interest. It provided that the oil on hand and unsold should be equally divided. It provided for a payment of $3,788.76 in lieu of the oil that had been sold. That stipulation was not made for the purpose of acquiescence in the decree of the court, for, if so, Brann and Butte would be giving the defendants the half interest in the equipment on the property which they owned and to which the defendants had no right or title. Certainly they were not donating that property to the defendants. The instrument was an agreement to convey and the deeds executed in confirmation with that agreement should have been admitted in evidence. Under that stipulation, confirmed and executed by the execution and delivery of the deeds, the possession, if any, theretofore had by Brann and Butte tacked with the possession of the defendants thereafter.

It was stated in Smith v. Chapin, 31 Conn. 530:

"The evidence was objected to on the ground that it did not show a sufficient possession in Manchester alone and could not be lawfully connected with the possession of Wells which preceded it because there was no privity between them. No privity of estate was shown, and if that was necessary, the evidence was improperly admitted. But it was not necessary. It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years, whether by one or more persons. This was settled in Fanning v. Wilcox, 3 Day (Conn.) 258. Doubtless the possession must be connected and continuous so that the possession of the true owner shall not constructively intervene be-

tween them; but such continuity and connection may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the possessor or of his possession, and is accompanied by a transfer of possession in fact."

In Waller v. Danby, 224 S. W. 615, the Supreme Court of Arkansas said:

"It is sufficient if it is shown that the prior occupant transferred his possession to him, even though by parol. The authorities agree that privity between successive possessors is all that is necessary to render them continuous, if the possession be in fact actual and adverse. The privity may be created in any way that will prevent a break in the adverse possession and refer the several possessions to the original entry, and it may be created either by parol or otherwise from vendor to vendee."

In Wilson v. Rogers, 134 S. W. 318, the same court held:

"In order to create the privity requisite to enable a subsequent occupant to tack to his possession that of a prior occupant, it is not necessary that there should be a conveyance in writing. It is sufficient if it is shown that the prior occupant transferred his possession to him even though by parol."

And that court, in St. L. & S. F. Ry. Co. v. Mulky, 139 S. W. 643, said:

"It is next contended that appellee cannot claim the benefit of the adverse possession of her grantors because their deeds to her did not include the land. While it is true that the land described in the deed to her does not include the strip in controversy, still her grantor, whose adverse possession had probably already ripened into title, intended it should and thought it did, and at the time of the conveyance transferred to her the possession of it in fact, intending that she should have all the land within the enclosure. This was sufficient even if it be conceded there was no conveyance of it in writing, and constituted such privity as entitled her to avail of his or their adverse possession and to tack her possession to theirs if necessary to complete her title and claim of ownership."

The same rule was announced by the Supreme Court of Wisconsin in the case of Illinois Steel Co. v. Budsisz, 106 Wis. 499, 81 N. W. 1027, 48 L. R. A. 830:

"Successive possessions, each reaching to and uniting with the one that follows it, by privity between the occupants, so as to render the possession of the property continuous from the first entry to the end of the period of twenty years, satisfies the statute, and a parol transfer of possession by one to another as the former goes out of and the latter goes into possession satisfies the essential of privity to tack the possessions together."

Privity is therein defined as:

"Privity in such a case is the same as in any other, and it may be created in the same way. It is merely a succession of relationship in the same right to the same thing. 1 Greenl. Ev. secs. 189, 523; Hart v. Moulton, 104 Wis. 349 80 N. W. 599. All that is necessary to privity between successive occupants of property and in regard thereto is that one receive his possession from the other by act of such other or by operation of law."

What we think to be the correct rule was therein stated as follows:

"Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act or by operation of law. If one by agreement surrenders his possession to another and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one and the limitation period upon the right of such owner to reclaim the land is thereby continued, because by the statute as construed the only essential to such continuity is that the dispossession of the true owner be actually continued."

The Illinois Supreme Court, in Rich v. Naffziger, 255 Ill. 98, 94 N. E. 341, held:

"The privity required to warrant the joinder of the possession of different parties to make up the period requisite to title by adverse possession consists of a continuous possession by mutual consent so that possession of the true owner shall not constructively intervene."

The rule quoted by the plaintiffs from 2 C. J. 90, as follows:

"Where one person enters into possession and another claims adversely to him and takes possession under such claim by consent of the first possessor pursuant to a compromise between them, this is not a continuity of the first possession, there being no privity between the parties"

—does not apply under the facts shown by this record, nor does the rule quoted by them from 1 R. C. L. 718, as follows:

"Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. * * * All that is necessary to privity between successive occupants of property, and in regard hereto, is that one receive his possession from the other by some act of such other or by operation of law; the one

taking under the other as by descent, will, grant, or other transfer of the possession."

On the other hand, the rule stated in 1 R. C. L. 718, omitted by plaintiffs and shown in the above quotation by stars as follows:

"If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued; indeed, the purpose of a continuous possession is the continuous ouster of the owner"

—does apply. That rule is otherwise stated in 1 R. C. L. 719, as follows:

"The continuity of the original adverse possession may be effected by any conveyance or understanding the purpose of which is to transfer to another the rights and the possession of the adverse claimant, when accompanied by an actual delivery of the possession. It is not necessary that such a conveyance should be recorded unless recording is made necessary by statute. Nor is it necessary that the transfer should be in writing. All that the law requires is a continuous adverse possession for the full statutory period, and that may be accomplished as well by a parol agreement or understanding, under which the actual possession of the premises is delivered, as by a written conveyance."

Plaintiffs cite the case of Rembert v. Edmonson, 99 Tenn. 15, 63 Am. St. Rep. 819, but they overlook the statement therein which is contrary to their contention, which reads as follows:

"Where there are several successive adverse occupants of real property, the last one may tack the possession of his predecessor to his so as to make a continuous adverse possession for the time required by the statute, provided there is a privity of possession between such occupants, and in case of an actual adverse possession, such privity arises from a parol bargain and sale of the possession of the premises, followed by delivery thereof, as well as by a formal conveyance from one occupant to another."

In our opinion, if the defendants got no more than naked possession from Brann and Butte, under the circumstances shown by this record, that was sufficient under the law. There was no hiatus. There was no instant during which this court can say that the possession passed to the plaintiffs or passed from Brann and Butte and the defendants.

The quitclaim deeds, stipulation, and decree of the federal court were offered in evidence by defendants to prove color of title and the taking of possession. The trial court erred in denying the offer of defendants, and that error was material. The Supreme Court of the United States, in Pillow v. Roberts, 13 Howard, 472, 14 L. Ed. 228, said:

"Statutes of limitation are founded on sound policy. They are statutes of repose and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the true owner. It is not necessary that he who claims their protection should have a good title or any title but possession. A wrongful possession obtained by a forcible ouster of the landowner will amount to a disseisin and the statute will protect the disseisor. One who enters upon a vacant possession, claiming for himself upon any pretense or color of title, is equally protected with the forcible disseisor. Statutes of limitation would be of little use if they protected those only who could otherwise show an indefeasible title to the land. Hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself and, of course, adversely to all the world. A person in possession of land, clearing, improving, and building on it and receiving the profits to his own use under a claim of title, is not bound to show a forcible ouster of the true owner in order to evade the presumption that his possession is not hostile or adverse to him. Color of title is received in evidence for the purpose of showing the possession to be adverse; and it is difficult to apprehend why evidence offered and competent to prove that fact should be rejected till the fact is otherwise proven."

In our opinion, when Butte and Brann procured and recorded conveyances to these tracts of land, they gave notice to the world that they were claiming the title thereto. They did in fact claim title thereto. When Brann and Butte stipulated and agreed with the defendants for a settlement of the litigation in the United States District Court, issued deeds of conveyance to the land, sold and conveyed the personal property and settled for the oil and gas that they had taken from the land, and let the defendants into joint possession of the land with them, that was sufficient to tack the possession of Brann and Butte and the defendants.

In International Land Co. v. Smith, 103 Okla. 101, 229 Pac. 601, and in Connor v. Thornburgh, 140 Okla. 16, 282 Pac. 122, this court said:

"Where a party takes actual possession

of an Indian allotment under properly executed deeds purporting to convey all the title from the heirs of the deceased allottee who died intestate, the owner of the property, and retains the actual, open, notorious, adverse, and exclusive possession of all the land, claiming to own all the title, and collects and appropriates the rents and profits thereupon, and continues in such possession without interruption for the statutory time, such possession creates in his favor a title by limitation against a prior grantee of any one or more of the heirs of the allottee, and amounts to an ouster of his cotenant, if such cotenancy was ever created by such prior conveyance."

Not only did the trial court exclude the quitclaim deeds, stipulations, and decree of the United States District Court, when offered in evidence, but the trial court excluded all of the testimony offered for the purpose of showing possession by Brann and Butte prior to the stipulation and agreement, and this evidence was excluded by the trial court on the theory that the possession of Brann and Butte and the defendants did not tack.

We can see no reason why this evidence should not have been admitted other than, as claimed by plaintiffs, that possession did not tack. Under the view this court takes that the possession sought to be shown by the record does tack, this evidence was competent evidence, and the trial court committed error in its rejection.

It is contended that the evidence offered was insufficient to support the contention of the defendants, and that the error in the rejection of the same was for that reason an immaterial error. This court has from time to time held that error in the rejection of testimony would not be considered unless the testimony offered is shown by the record, and unless the testimony offered is reasonably sufficient to sustain the contention for which it is offered. But that rule cannot be applied where, by reason of mistake in the opinion of the trial court as to the law, the entire defense is rejected, and the defendants are denied the opportunity to put on any testimony to support their theory of the defense.

In Brundage v. Mellon, 63 N. W. 209, the Supreme Court of North Dakota held:

"Where the trial court, by its ruling in excluding evidence, plainly asserts that the plaintiff cannot, as a matter of law, recover on the theory on which he is seeking to sustain his action, he is not bound, in the absence of notice that he must so do, to offer proof of the other allegations of his complaint. The other facts, for the purpose of reviewing the ruling of the trial court, are, under such circumstances, to be deemed capable of proof; and it is to be assumed that plaintiff could have proved them had he not been met with such adverse ruling, rendering further evidence meaningless and without force in the case."

In support of that holding, that court said:

"But it is insisted that plaintiff failed to establish, or offer to establish, a case against defendant, even assuming that the evidence rejected had been received. But we do not think that, in the absence of notice from the court that he must so do, a party is bound to proceed to offer further evidence in the case when a ruling is made which renders it impossible for him to recover. The plaintiff, by the decision of the trial court, was notified that, no matter what he might prove, he could not make out a cause of action for deceit against defendant, unless he (defendant) could be personally connected with the wrong. It was waste of time for him to proceed further. Nay, the foundation for further proof was wanting. He could not prove that the representations were false, and were known to be false by the party making them, with no representations established in the case on which he could base a further inquiry. The true rule is stated in Loeb v. Willis, 100 N. Y. 231, 3 N. E. 177. The court say, at page 235, 100 N. Y., and page 177, 3 N. E.: 'After ruling, as a matter of law, that Willis was estopped by the former adjudication, he was under no obligation to offer any evidence; and it cannot be said here that his offer was not sufficiently broad or specific, because we cannot tell what, but for the erroneous ruling, he might have proved.' For counsel for respondent to insist that the error was without prejudice is to beg the whole question. By making this contention, he necessarily assumes that the plaintiff would have been unable to prove a case had his course not been blocked on the very threshold of the trial by defendant's objection."

See, also, Jeffress v. Virginia Ry. & Power Co. (Va.) 104 S. E. 393; American Express Co. v. Des Moines Nat. Bank (Iowa) 152 N. W. 625; Mount Vernon Brewing Co. v. Teschner (Md.) 69 Atl. 702; Otero v. Otero (Ariz.) 90 Pac. 601; Coolidge v. Boston Elevated Ry. Co. (Mass.) 102 N. E. 74; Hoffman v. Mayaud (U. S. C. C. A., Wis.) 93 Fed. 171; Kay v. Glade Creek R. R. Co. (W. Va.) 35 S. E. 973.

The defendants plead the statute of limitation. They had the right to prove that defense if they could by any competent testimony, and they cannot be prevented from proving their defense through mistake in the

300

opinion of the trial court that the possession of Brann and Butte did not tack with that of the defendants, and they ought not to be compelled to submit their case to this court on testimony offered and excluded by the trial court when the entire testimony offered in support of that contention was excluded by the trial court.

An examination of the record discloses that the trial court found that the defendants "* * * claim and derive whatever title they have by mesne conveyances from Cloria Grayson, * * *" and that "* * * the evidence fails to show an open, adverse, continuous and hostile possession in the defendants, * * * or any of them, or their predecessors, in the title, prior to November 17, 1907." (C.-M. 734, 735.) When considered together these findings can mean only that the trial court intended to hold, as it did throughout the trial of the case, possession of the defendants did not tack with that of Brann and Butte, and that neither the defendants nor their predecessor in title, Cloria Grayson, had possession of the land prior to November 17, 1907. That theory is well supported by the record. The trial court found that neither the defendants "nor those under whom they claimed, took any possession whatever of said land until sometime in 1912, after the decision of the federal court in the case of Brann v. Bell. * * *" The trial court made no finding whatever as to when Brann and Butte took possession. The record shows a reason for the failure of the trial court to make that finding. During the trial of the cause one of the attorneys for the plaintiffs made a statement as follows:

'Brann was in possession of this land holding adversely to Harris and Bell, * * * and so was Butte. They were holding adversely to these people.'

That statement was made as a part of the plan of the plaintiffs to show that the possession of Brann and Butte and the defendants did not tack. Plaintiffs always contended that the possession of Brann and Butte was adverse to the defendants as the basis of their claim that the possession did not tack.

Defendants offered in evidence the deed from Brann to Harris and Bell. Mr. Hatcher objected as follows:

"To which the plaintiffs object because the deed taken isn't the foundation of their title."

The court sustained that objection. The deed was not offered for the purpose of showing foundation of the title of the defendants, but was offered for the purpose of showing the property and interest claimed. The trial court was entirely in error in sustaining the objection and plaintiffs were in error in the grounds of the objection. The defendants never claimed title through Brann. The defendants claimed title through prescription.

The deposition of George O. Butte was offered. The objection was made thereto that it was incompetent, irrelevant, and immaterial, and Mr. Hunt, counsel for the plaintiffs, made the statement as part of the objection that it related to a time and to a chain of circumstances that in no way affected the merits of the case between the parties herein and that it was immaterial to any issues joined in the case. Mr. Blair, counsel for the defendants, said that it was offered in support of their claim of the statute of limitations. The court asked, "You are not claiming any of the interest now being litigated under the deed from Brann?" and the court excluded the testimony. There could be only one ground for its exclusion and that is that the court thought the possession did not tack. A similar objection was sustained to the deposition of Mr. Brann. The deposition of Mr. Butte was that he bought the Nancy Colbert allotment in July, 1906; that he made a lease on it for oil in August, 1906. The lease was to A. H. Reese, who paid him a consideration therefor and who actually went on the land and commenced operations. He was asked this question:

"Q. During the time immediately subsequent to the making of these oil and gas leases on these lands, who was in possession of these lands, and what kind of possession did they have?"

—and he gave this answer:

"A. Well, Mr. Brann was actually operating the 160 of the allotment of Garfield Colbert, and A. B. Reese and his associates were operating on the Nancy Colbert allotment. That is, not on all portions of it; it is in separate tracts."

For the purpose of showing the opinion of the trial judge formed during the trial and the theory on which this cause was tried, attention is called to a statement of the court made when the trial was near its close. The trial court had repeatedly sustained objections to testimony tending to connect the possession of Brann and Butte with that of the defendants or to show possession prior to November 16, 1907. Mr. Shaffer for the defendants again offered an instrument to that effect.

"The Court: What is the purpose of it? Mr. Shaffer: For the purpose of connecting up the claim of Butte and the Quaker Oil & Gas Company for possession of the property, this being a suit brought by Butte to quiet title against the Oklahoma Land Company et al. It isn't for any purpose except to show that he was in possession at that time. The Court: Well, it is admitted, and has been all along through this trial, that Butte and those fellows who took under him have been in possession of an undivided one-half interest. Objection sustained."

What could be more clear? The trial court near the close of the trial sustains the objection to the testimony offered to show possession and as a reason therefor states that it has been at all times admitted that Brann and Butte had been in possession.

The record further shows:

"Mr. Shaffer: That is a question we want to present, but I am not talking about Harris and Bell. I am talking about the plaintiffs in this case. Here is a man that went into possession of this land in 1906 and the plaintiffs in this case never said a word until 1907. Mr. Hatch: If you claim adverse possession, it must be by reason of what you have done and not by reason of what the plaintiffs neglected to do. Mr. Shaffer: That is what I am offering to show the court, that we went into possession. Mr. Hatch: But certainly not under the title of plaintiffs. Mr. Shaffer: Certainly. We contend we are not claiming under these plaintiffs, but adversely to them. Mr. Hatch: The evidence that you have offered already shows that you did not do that. The decree of the court shows that adverse possession stopped away back there in 1911. Mr. Shaffer: Then that is a question of fact for the court to determine, whether or not we had adverse possession, but I claim these deeds, if we took no possession, don't amount to anything, but if we took possession, they are certainly competent."

Here was a plain statement of possession since 1906, and it was undenied. The defense presented was that the possession of Brann and Butte did not tack with that of defendants and that the statute of limitations commenced as to the defendants when Brann and Butte let defendants into joint possession after November 16, 1907. The contention is clearly stated by Mr. Hatch for plaintiffs on pages 503 and 504 of the case-made where he said:

"Mr. Hatch: And it was agreed that your interests were adverse to the Butte interests and consequently they could not be in adverse possession—I mean they could not claim them as their predecessors in title."

To this statement, Mr. Shaffer answered:

"They settled their controversy by one conveying to the other. Certainly the possession of one would go over to the other."

There was the issue and the trial court took the side of the plaintiffs; he excluded all evidence to the contrary. In our opinion he was in error in his construction of the law and therefore erroneously excluded competent evidence. Mr. Shaffer gave the trial court every opportunity to get right. He said:

"This testimony possibly might not be competent at this time if it were not followed up by evidence of actual possession of it at the time. Now, the court has the discretion of not admitting this if it is not followed up."

Nevertheless the trial court excluded the offer and said:

"I cannot see where it is competent. Objection sustained."

If there was any question in regard to the matter, it would, in our opinion, be settled by the statement of the attorney for plaintiffs, in which he said:

"Now, then, they were never in possession; neither were those under whom they claim ever in possession until after this decision of the court in 1909. They cannot win as being in possession under Brann because Brann was holding adverse to them up until 1911, when the court decided Brann had only a half. So they cannot tack on to Brann their possession, and I can see no other purpose of their introducing the deed from Brann to them. Finally, in accordance with this decree, they made those deeds to each other. They are not competent because they haven't been pleaded."

There was a direct admission of the possession of Brann and Butte.

We, therefore, hold that, where a trial court, by its ruling in excluding evidence, plainly asserts that a party cannot, as a matter of law, defend on the theory on which he is seeking to defend an action, he is not bound, in the absence of a notice that he must so do, to offer proof of the allegations of his defense. The facts, for the purpose of reviewing the ruling of the trial court on the law, are, under such circumstances, to be deemed capable of proof, and it is to be assumed that plaintiff could have proven them had he not been met with such adverse ruling, rendering further evidence meaningless and without force in the case.

In the opinion of this court, there is but one issue undetermined and which should be heard by the trial court. That is, Did Brann and Butte hold possession of this property adversely to the rights of the plaintiffs for

a time sufficient, tacked to the adverse possession of the defendants, to bar the plaintiffs under the statute of limitations? As to that question, we express no opinion. In determining that question the trial court should consider all of the competent evidence necessary to the determination thereof, including any competent evidence offered in support of the plaintiffs' contention that the possession of Brann and Butte was not adverse possession, for the reason that Brann and Butte were cotenants with the plaintiffs.

The cause is reversed and remanded to the trial court, with instructions to vacate the judgment and grant a new trial and to take such further proceedings as are consistent herewith.

MASON, C. J., and HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., concurs in conclusion. HUNT, J., disqualified. CLARK and RILEY, JJ., dissent. ROWLAND, Special J., dissents.