Charles **YEAGER**, Appellant,

v.

Eugene **FARMER** and Fred King, Appellees.

No. 46538.

Supreme Court of Oklahoma.

April 6, 1976.

Rehearing Denied May 18, 1976.

**346**

Ed Abel, of Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, for appellant.

Foliart, Mills & Niemeyer, Oklahoma City, for appellee, Fred King.

SIMMS, Justice.

This appeal is brought by plaintiff in a personal injury action where verdict favored one of the two defendants. The Court of Appeals reversed the judgment of the trial court and remanded the cause for a new trial. We Grant Certiorari, vacate the opinion of the Court of Appeals, and affirm the judgment of the trial court.

Plaintiff, Charles Yeager, brought suit against Fred King and Eugene Farmer to recover for injuries sustained in a car-pickup truck collision around midnight on February 14, 1972, in the 10100 block of N.E. 23rd Street, in Spencer, Oklahoma.

Plaintiff's petition alleged that he was a passenger in Eugene Farmer's vehicle (a pickup truck); that as they drove north onto N.E. 23rd Street from a private drive, Defendant Fred King, who was driving his automobile west on N.E. 23rd Street, collided with them in the west bound lane of N.E. 23rd Street. Plaintiff alleged that this collision resulted from the combined negligence of the defendants in the following particulars:

"(a) Defendant King was traveling between 60 and 70 mph which was greater than the posted speed limit of 55 mph and greater than reasonable, and greater than would permit him to stop within the assured clear distance ahead.

(b) Defendants were driving while under the influence of alcohol.

(c) Defendants failed to use their brakes and steering mechanism to avoid the collision.

(d) Defendant Farmer failed to yield the right of way when he entered said street from a private drive."

Defendant King's Answer denied any and all negligence on his part and for affirmative defenses he alleged that the negligence of the plaintiff and the plaintiff's driver, Eugene Farmer, proximately caused the accident; that he (King) was con-

fronted with a sudden emergency to which he reacted as a reasonable and prudent person and further that the accident was unavoidable.

Eugene Farmer answered denying all material allegations of the plaintiff's petition. Plaintiff's Reply to King's Answer denied the material allegations therein and plaintiff likewise replied to Defendant Farmer's Answer.

The issues were thus joined, and the cause tried to a jury.

The evidence concerning the accident was disputed. Plaintiff and Defendant Farmer both testified that they had been drinking beer and shooting pool in the Sanopa Lounge at 10100 N.E. 23rd Street for several hours preceding the accident. Both testified that they had consumed only a few beers, but witnesses who had been in the tavern at the time testified that both plaintiff and Farmer were very drunk when they left just before midnight.

Plaintiff suffered head injuries in the accident and could not remember anything except that Defendant Farmer was driving the pickup.

By way of defense, Defendant Farmer testified that at the time of the accident, his license was under suspension for the offense of driving under the influence; that he was abiding by that suspension and plaintiff was driving the pickup when the accident occurred. According to Defendant Farmer, the pickup's headlights were on when they pulled out of the parking lot onto 23rd Street.

However, King and three eye-witnesses to the accident testified that the lights of the pickup were not on. King stated that he was driving within the 55 mph speed limit and that the pickup pulled out in front of him so suddenly that he did not have time to apply his brakes or avoid the accident. The three eyewitnesses confirmed Defendant King's account of the accident and they were of the opinion that King could not have avoided the accident.

The investigating officer arrived at the scene within two minutes after the accident happened. After speaking with King, he checked the light switch on Farmer's pickup and found that it was in the "off" position.

The jury found in favor of Defendant King and against Defendant Farmer.

Plaintiff appeals urging error in the trial court's ruling that excluded from evidence the result of a blood alcohol test performed on Defendant King after the accident. While blood alcohol tests were performed on both defendants pursuant to the Implied Consent Law, 47 O.S.1971, §§ 751, et seq., plaintiff made no attempt to introduce the result of Farmer's test, so that matter is not before us.

The last sentence of 47 O.S.1971, § 752 concerns the admission of blood alcohol test results in a civil action and states that:

"The results of the test or tests as provided for herein shall not be admissible in civil actions."

After the jury was impaneled, a hearing was held in chambers out of the presence of the jury. There, over objections by King, plaintiff adduced the testimony of H. E. Maxey, a chemist, about an Oklahoma State Bureau of Investigation Chemical Analysis Report. The Report reflects that one William J. Caveny performed a blood alcohol test on a sample of blood taken from one Freddy King, Jr., on February 15, 1972, at 1:45 a. m., and that the test showed a blood alcohol content of .19% w/v. Mr. Maxey was also allowed to testify as to the significance of this test result. He stated that in order to achieve such a score, one would have to consume slightly over nine bottles of beer or nine ounces of 100 proof whiskey. It was Mr. Maxey's further opinion that such consumption of alcohol would have influenced Fred King's driving ability.

Under the exclusionary provisions of § 752, supra, the trial court held that the

results [1] of the chemical analysis and Mr. Maxey's testimony concerning same were not admissible, stating:

"I want everybody here to understand that the testimony, the results of this chemical examination are not admissible in this Court in this case. They are admissible in a criminal case, however. And they—they could be used if the testimony—if the testimony of any witness varies from what these tests would indicate. They could be used as a basis for perjury prosecution.

"Now, I just want everybody to understand that; that these chemical tests, while they are not admissible in this action, in this case, they could be used in a criminal case. Does everybody understand that? Mr. King, do you understand that?"

In his case-in-chief, King testified that he had consumed only two beers during the afternoon preceding the accident.

Plaintiff asserts as error that the trial court erred in failing to allow plaintiff to call Maxey as a witness to impeach King's testimony.

King argues in response that even if § 752, supra, would allow the admission of blood alcohol test results for impeachment purposes, plaintiff did not preserve that issue for review on appeal. That while plaintiff made an offer of proof of Maxey's testimony during plaintiff's case-in-chief, no offer of proof was made following King's testimony. King's position is that since plaintiff made no attempt to have the testimony admitted at that time, the trial court not only committed no error, but in fact, had no opportunity to err.

■ Clearly the trial court was correct in its ruling which excluded the Oklahoma

State Bureau of Investigation Chemical Analysis Report, and Maxey's testimony insofar as plaintiff's case-in-chief is concerned. In *R. W. Rine Drilling Co. v. Ferguson,* Okl., 496 P.2d 1169 (1972) we held that a proceeding before the State Industrial Court is a "civil action" within the meaning of that term as it is used in § 752, supra, and that the results of a blood alcohol taken under 47 O.S.1971, § 751, are therefore not admissible in evidence. The syllabus by the Court reads as follows:

"1. The results of a test to determine the alcoholic content of a motorist's blood taken under the authority of what is now 47 O.S.1971 § 751, et seq. are not admissible in evidence in a proceeding before the State Industrial Court.

"2. A proceeding before the State Industrial Court is a 'civil action' within the use of that term in the last sentence of 47 O.S.1971 § 752."

Of course, before we may reach the issue of the admission of Maxey's testimony for impeachment purposes, we must first determine whether the issue was preserved for review on appeal.

■ After King testified that he had drunk only two beers prior to the accident, plaintiff made no offer of proof to the court as to what the testimony of his witness, Maxey, would be and the purpose it would serve. In the absence of an offer, the trial court obviously had no opportunity to make an intelligent and well advised decision thereon. It is true, as Defendant King urges, that the general rule is that this Court will not consider alleged errors by a trial court in the admission or rejection of evidence unless proper offers of the evidence were made and included in the record. *Barbe v. Barbe,* Okl., 378 P.2d

1. This ruling, of course, was limited to the precise issue of the results of the blood alcohol test. The transcript reveals that extensive evidence was admitted bearing on the question of King's impaired driving ability. Through testimony of the investigating officer, the jury was informed that a nearly empty whiskey bottle was found in his car; that the officer smelled liquor on his breath; that in his opinion both King and Farmer were intoxicated and further although the results of the test were excluded, the judge allowed plaintiff to elicit the fact that the officer requested blood tests on both drivers. Other various witnesses testified that they observed King after the accident and were of the opinion that he was not intoxicated.

314 (1963); *Hair v. Wilson*, Okl., 391 P.2d 789 (1964).

The instant case, however, presents a separate consideration. There is an exception to the general rule requiring that a specific offer of proof be made and included in the record.

That exception is explained by Wigmore, 1 Wigmore § 17, p. 318, as follows:

"But a specific offer of evidence is not needed where an *entire class of evidence* has been in advance formally declared inadmissible by the trial court during preliminary argument or colloquy; for the court's ruling relates forward to all possible offers of such evidence and renders them needless. Moreover, after such a ruling, the persistence of counsel in making or repeating such offers may be treated as improper attempts to get before the jury the effect of such evidence."

■ While the cases decided under this exception have been concerned with situations where a trial judge has rejected a party's proffer of evidence establishing an entire defense to an action,[2] we are of the opinion that the exception is applicable to the instant matter. The preliminary ruling of the trial court following the hearing clearly established the fact that Maxey's testimony about the test results would not be admitted during any part of the trial for any reason.

Despite the fact that this action involves unique circumstances—a statutory exclusion of evidence—the ruling of the court places the offer of proof issue within the ambit of the above exception.

Therefore, we view plaintiff's offer of Maxey's testimony as a standing offer of proof obviating the necessity of a specific offer for impeachment purposes.

Plaintiff is, nonetheless, bound by that offer of proof which he did make to the court and we now consider the substance of that offer.

Plaintiff's offer consisted entirely of Maxey's testimony about a test conducted by other persons who were not witnesses. No testimony was offered to establish the identity of Defendant King as the person from whom a blood sample was taken, nor was any testimony offered to establish who withdrew the blood, when the sample was obtained or the manner in which it was obtained.[3] Plaintiff's offer did not include any testimony to establish the identity of the blood sample or the chain of custody. Nor did the offer include testimony by the person who conducted the test.

Maxey was a stranger to the entire series of events. Plaintiff intended to discredit King by having Maxey testify about the significance of the test results—without presenting any witness to establish the fact that the test was conducted upon a sample of King's blood or that the sample was obtained in compliance with the Implied Consent Law, 47 O.S.1971, §§ 752, 756(e).

■ Obviously, Maxey was incompetent to testify about this blood alcohol test and his testimony regarding same constituted mere hearsay. The probative force, if any, of evidence about this test depended upon the competency and credibility of persons who were not called as witnesses. See, *In Re Porter's Estate*, 208 Okl. 475, 257 P.2d 517 (1953).

We note that in *Perry v. City of Oklahoma City*, Okl., 470 P.2d 974 (1970) which concerned the admission of a blood-alcohol test result under the provisions of

**2.** See: *Harris v. Grayson*, 146 Okl. 291, 294 P. 187 (1930); *Marr v. Marr*, 43 Ill. App.2d 25, 192 N.E.2d 559 (1963); *Caminetti v. Manierre*, 23 Cal.2d 94, 142 P.2d 741 (1943); 4 *C.J.S. Appeal and Error* § 291bb.

**3.** A separate ramification of this absent testimony is that 47 O.S.1971, § 752 designates

and limits those persons qualified to obtain blood samples taken under authority of the implied consent law. See, *Raley v. State*, Okl.Cr., 479 P.3d 609 (1971), regarding the establishment of these circumstances by a competent witness when the person who actually withdrew the sample is not available to testify.

the Unexplained Deaths Act, 63 O.S.1971, §§ 931–955, a lengthy discussion is set forth concerning the sufficiency of the evidence used to establish the identity and integrity of the sample of blood. There, testimony from various witnesses established the person who drew the blood, the care and custody of the vial of blood at all times prior to its testing, and the testing procedure. The disparity between evidence in the instant case and *Perry* is obvious.

Plaintiff did not establish a sufficient predicate for the introduction of the test results. The offer of proof he presented to the Court consisted entirely of hearsay evidence, and we are of the opinion that it was properly excluded by the Court.

This opinion should not be construed as a comment on the question of admissibility of blood-alcohol test results in a civil action for impeachment purposes, as we are not able to reach that issue because no evidentiary predicate was established in the instant case for admissibility of the test result for any purpose.

We vacate the opinion of the Court of Appeals, and Affirm the judgment of the trial court.

DAVISON, IRWIN, BERRY, DOOLIN and SIMMS, JJ., concur.

BARNES, J., specially concurs.

HODGES, V. C. J., and LAVENDER, J., concur and join in BARNES, J., specially concurring.

BARNES, Justice (specially concurring) :

I concur in this opinion, but I would further hold that the last sentence of 47 O.S.1971, § 752, means just what it says: "The results of the test or tests  .   .   . shall not be admissible in civil actions." More specifically, that would include being inadmissible for impeachment purposes.

I am authorized to state that Vice Chief Justice HODGES and Justice LAVENDER, concur in this view.