[Civ. No. 3899. Third Appellate District.—November 1, 1929.]

LAWRENCE MAHONEY et al., Appellants, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

Dorris & Henderson for Appellants.

E. W. Camp, Robert Brennan, Leo E. Sievert, Arline Cavins Matheron and C. L. Claflin for Respondents.

FINCH, P. J.—This is an action for personal injuries suffered by plaintiff Maria Mahoney when an automobile in which she was riding as a guest was struck by a railroad train alleged to have been in the "exclusive possession and control" of the defendant Railway Company. Verdict and judgment went for the defendants and the plaintiffs have appealed from the judgment.

The accident occurred near a country crossing a few miles south of Bakersfield. The highway there runs north and south and the railroad runs from a northeasterly to a southwesterly direction. The automobile in which Mrs. Mahoney was riding approached the crossing from the south as the train in question was approaching from the northeast. The complaint alleges that the view of the railroad from the highway is so obstructed as to make the crossing "extremely dangerous to those approaching it along the said highway." Admittedly, this allegation was sufficiently denied by the defendants and the evidence relating thereto is conflicting. Paragraph IX of the verified complaint reads as follows: "That as the said locomotive and string of cars approached

the said crossing, and before they entered upon said crossing, as aforesaid, the defendants and each of them wilfully, carelessly and negligently failed to sound any whistle, ring any bell or give any other warning signal of the approach of the said locomotive and the string of cars to the said crossing, and that the said defendants wilfully and negligently propelled, ran and operated the said locomotive and the said string of cars up to and upon said crossing at a reckless and dangerous rate of speed, and wilfully and negligently failed to maintain or exercise due care and caution in the control and management of the said locomotive and the said cars while the same were approaching and entering upon the said crossing.''

The defendants answered paragraph IX in the following language: ''Defendant denies the allegations contained in the ninth paragraph of said complaint and all thereof.''

In like form the defendants denied the allegation that the train was in the possession and control of the defendant Railway Company. In a separate defense the Railway Company alleged that the collision was ''proximately caused by the negligence of the said Maria Mahoney,'' setting forth the particulars of such negligence. ■ In appellant's opening brief four alleged errors are specified and it is then said: ''These four errors all relate to one principle, and they may be considered together. The principle is that a denial of the allegations of a verified complaint which merely states that 'defendant denies the allegations of paragraph (giving number)' and all thereof' is not such a specific denial as is required under our system of pleading, and is in effect an admission of the allegations of those paragraphs of the verified complaint.''

At the time the answer was filed and at the time of the trial section 437 of the Code of Civil Procedure provided: ''If the complaint be verified, the denial of each allegation controverted must be specific, and be made positively, or according to the information and belief of the defendant.''

It has been held that in an answer alleging that the defendant has no information or belief sufficient to enable him to answer the allegations of a particular paragraph of the complaint he may deny the same in the form adopted by the defendants in this case. (*Read* v. *Buffum,* 79 Cal. 77, 82 [12 Am. St. Rep. 131, 21 Pac. 555].) In considering simi-

lar denials, in *Etchas* v. *Orena*, 121 Cal. 270, 271 [53 Pac. 798, 799], it is said: "None of these facts were presumably within the knowledge of the defendant. . . . In answering the complaint in this form it was not necessary that he should make a specific denial of each of the allegations. . . . As the defendant was equally without information or belief upon either of them, he could properly make the denial in the form adopted by him." In *Jensen* v. *Dorr*, 159 Cal. 742, 747 [116 Pac. 553, 555], in discussing similar general denials for want of information or belief, it is said: "Whatever we might think of this form of denial were the question a new one in this state, it is settled by the decisions that as to matters not presumably within the knowledge of a defendant such a form of denial is permissible, and that a specific denial of each of the allegations as to such matters is not essential, notwithstanding that the complaint is verified." ▇ Where, however, the matters alleged in the complaint are presumably within the knowledge of the defendant, his denials thereof, as the foregoing decisions imply, must be specific. (*Hensley* v. *Tartar*, 14 Cal. 508, 510; *People* v. *Hagar*, 52 Cal. 171, 182; *Muraco* v. *Don*, 79 Cal. App. 738 [250 Pac. 1109]; *Kinard* v. *Kaelin*, 22 Cal. App. 383, 390 [134 Pac. 370].)

The plaintiffs did not demur to the answer or move to strike out any of the defective denials thereof. Plaintiffs' first suggestion that such denials were defective was made by their counsel during the opening statement to the jury, when it was stated that the answer of the defendant Railway Company admitted that the train which struck the automobile was being operated by such defendant at the time of the accident. Counsel for the Railway Company interrupted and denied that the answer made any such admission. After argument by respective counsel the court said, "I will hold that denial good." The plaintiffs, without further objection, thereupon introduced evidence to prove the allegations defectively denied and the defendants, also without objection by plaintiffs, introduced evidence in opposition thereto. At the close of the evidence the court refused to instruct the jury, as requested by the plaintiffs, to find for them in accordance with the allegations so denied. Respondents contend that, by introducing evidence in support of such allegations, the plaintiffs abandoned their objections

to the sufficiency of the denials thereof. In discussing a similar question it is said: "It is not only the right of the court to settle or to designate at the outset of a trial the issues of fact which have been joined by the pleadings, and to direct and limit the introduction of evidence to those issues alone, but it is eminently a proper practice, and one which would serve greatly to expedite the trial of causes, if more commonly followed. At the same time, when the court has so declared upon the issues, either party has the unquestioned right to except to the ruling of the court, and if by that ruling he shall have been deprived of any substantial right of defense, to urge that upon the attention of the appellate court. He may not only submit to the ruling of the court without future offer of evidence upon the excluded defense, but it is his duty to accept such ruling." (*Pastene* v. *Pardini,* 135 Cal. 431, 433 [67 Pac. 681, 682]. See, also, *San Joaquin Light & Power Co.* v. *Barlow,* 43 Cal. App. 241, 243 [184 Pac. 899].)

It remains to determine whether the plaintiffs have been "deprived of any substantial right" by the ruling of the court. A judgment is not to be reversed "for any error as to any matter of pleading . . . unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, sec. 4½.) There is nothing in the record to indicate that the case was not tried on its merits as fully as if the allegations of the complaint had all been denied specifically.

The plaintiffs introduced evidence tending to show that the train in question was being operated by the defendant Railway Company at the time of the accident. They called the engineer and fireman of the train crew as adverse witnesses, both of them being named as defendants. The engineer testified "that the train was operating between 28 and 30 miles per hour; that the bell on the locomotive was ringing; that he blew the regulation crossing whistle for this crossing; that just as the pilot of the engine started over the concrete pavement of the highway the fireman yelled at him, 'hold her'; that he immediately applied the brakes in emergency; that just as he did apply the brakes in emergency he saw the automobile appear on the railway track, approximately 50 feet in front of the pilot of the locomotive; that he did not put the locomotive in reverse." The plain-

tiffs called two experts, who testified that a locomotive can be stopped more quickly by putting it in reverse than by the application of the air-brakes and that "releasing the sand from the sand dome on to the track assists in making a sudden stop." One of them expressed the opinion that "a locomotive with one express car and one passenger coach attached, running at the rate of 28 or 30 miles an hour, could be stopped in a distance of less than 100 feet." He admitted "that he wanted to see the railroad company lose the suit." A county traffic officer, called by the plaintiffs, testified "that he heard the locomotive whistle; that he arrived at the scene of the accident just a short time after it happened and assisted in moving the injured parties; that he examined the highway and found rubber marks showing where the car had slid its wheels; that he paced the rubber marks from where the tires gradually started to slide to where they left the pavement and it was 48 good long steps, better than 150 feet; that after the car left the pavement he traced the tracks up on to the railway track at the point of the collision." Another of plaintiffs' witnesses testified "that he saw rubber marks on the pavement for approximately 150 feet before they left the pavement; the pavement was dry; that the automobile was struck upon the railroad right of way and not upon the highway." Witnesses for the defendant testified that the locomotive whistle was blown and that the bell was ringing as the train approached the crossing and that the train was moving at 28 to 30 miles an hour. One of them testified that he "measured the tire marks on the pavement; that the first tire marks on the pavement were 220 feet from the rails; that they started to leave the pavement 123 feet from the rails; that he traced the wheel marks down through a gully three or four feet deep and on to the railroad track; that the automobile was struck exactly 66 feet from the center of the crossing." The driver of a hay wagon testified that "nearly a quarter of a mile from the railroad tracks, the automobile involved in the accident passed him going at the rate of 50 miles per hour." An expert witness testified "that a train similar to the train involved in the accident traveling at the rate of 30 miles per hour, completely equipped with automatic air brake equipment, functioning in perfect efficiency, could not be stopped in less than 300 feet."

Appellants admit that the "dangerous character of the crossing was one properly placed in issue" and, under the evidence, "was a question for the jury." The other alleged acts of negligence relied on by the appellants, as stated in their opening brief, are: "The failure of the engine crew to ring the bell or sound the whistle as required by section 486 of the Civil Code" and "the failure of the engine crew to use proper means to stop the locomotive, upon ascertaining that the approaching automobile was likely to go upon the track."

The uncontradicted evidence shows that the bell was rung and the whistle sounded as required by section 486. No effort was made to prove the contrary. Viewing the evidence in the light most favorable to the plaintiffs, it appears that it would have been possible to have stopped the train within a distance of 100 feet and that the train crew first discovered the perilous position of the automobile when the train was within about 70 feet or less of the point of collision, and when it was therefore impossible to stop the train in time to avoid the collision.

An examination of the entire record not only fails to show "that the error complained of has resulted in a miscarriage of justice," but it affirmatively appears that the evidence is insufficient to support a judgment in favor of the plaintiffs. Under such circumstances the constitutional provision cited forbids a reversal. (*Nittler* v. *Continental Casualty Co.*, 94 Cal. App. 498 [271 Pac. 555, 272 Pac. 309].)

The judgment is affirmed.

Plummer, J., and Thompson (R. L.`, J., concurred.