[Civ. No. 12928.   Second Dist., Div. Three.   Apr. 28, 1942.]

CHAMBERLAIN COMPANY (a Corporation), Appellant,
v. ALLIS-CHALMERS MANUFACTURING COM-
PANY (a Corporation), Respondent.

Salisbury, Robinson & Himrod for Appellant.

LeRoy B. Lorenz for Respondent.

SHAW, J. pro tem.—The plaintiff bought from the defendant a sifting machine, the transaction being embodied in a written contract. The machine was delivered to and operated for a time by the plaintiff. Thereafter, the plaintiff brought this action to recover damages for breach of warranties of the machine. The answer denied the existence of the warranties sued on, and also set up a counterclaim for a balance due and unpaid on the purchase price of the machine. Judgment went against plaintiff on its complaint and for defendant on its counterclaim, from which plaintiff appeals.

At the trial it was stipulated that the balance of the price, as alleged in the counterclaim, was due by the terms of the contract and unpaid, leaving for consideration only the questions arising on plaintiff's claims of breach of warranty. In

its amended complaint plaintiff alleged both what it claimed to be an express warranty of the efficiency of the sifter, set forth in the contract, and also an implied warranty, raised by the law, of its fitness for the purposes of plaintiff. We conclude that there was an express warranty, and therefore deem it unnecessary to discuss the points made regarding implied warranty.

The provision of the contract upon which plaintiff relies to state an express warranty reads thus: ''Allis-Chalmers Manufacturing Company, hereinafter called the Company, proposes to furnish the Purchaser, on the following conditions, the machinery described below, or in the Company's specifications attached, which are made a part of this proposal, f.o.b. cars point of shipment. One (1) Nordyke Square Sifter #4-22 lined with rubber and to be used to grade two tons per hour of Dry Pumice through the following screen meshes at 98½ per cent efficiency. . . .'' Following this is a schedule of screen sizes. No specifications appear to have been attached to the contract. At the trial it was stipulated that the words ''at 98½ per cent efficiency'' were inserted here in the contract at the request and upon the insistence of plaintiff.

Plaintiff contends that the part of the contract above quoted is a warranty that the sifter will grade two tons per hour of dry pumice at 98½ per cent efficiency through the screen meshes listed, and we think this contention is well taken. Section 1732 of the Civil Code, which is a part (section 12) of the Uniform Sales Act, in force in this state since 1931, defines an express warranty as follows: ''Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty.'' The terms of this section do not require the use of the word ''warrant'' or any other such formal words to create a warranty, and the rule established long before the adoption of the Uniform Sales Law is that no such words are necessary. (*Cole* v. *Weber*, (1924) 69 Cal. App. 394, 397 [231 Pac. 353].)

Obviously, the language above quoted from the contract is not and does not purport to be a mere statement of the

seller's opinion, so the last sentence of section 1732 does not preclude it from being regarded as a warranty. The stipulated fact that plaintiff insisted on having additional words inserted in this provision is enough to show, if more than its mere wording and plaintiff's signature to the contract were needed, that plaintiff relied thereon in making the purchase.

Defendant argues that the words of the contract beginning with "to be used" are not an affirmation of fact or a promise by the seller, but are "what the buyer informed the seller it intended to do with the goods purchased." Mere reading of the provision as a whole shows that the words referred to by defendant are not cast in the mold suggested. They are, as located in the contract, a part of defendant's proposal to plaintiff and must have been intended by it to convey some idea to plaintiff. Defendant also contends that the words inserted in the contract at plaintiff's request are worth nothing, because of their context. But in construing a contract, the whole of it "is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) We therefore look for some useful purpose to be served by the clause introduced by the words, "to be used." The words just preceding them are doubtless descriptive of the article sold, and the list of screen sizes serves in part the same purpose. But what purpose can be served by the words, "to be used to grade two tons per hour of Dry Pumice through the following screen meshes at 98½ per cent efficiency," except that of an assurance to the purchaser of the capacity and efficiency of the article described? We see none. Such a provision might reasonably be expected in a contract of sale of a machine, and while possibly more apt words could have been found, those used are not incapable of the meaning that the sifter will have a 98½ per cent efficiency when used as stated. We therefore ascribe that meaning to them. So construed they amount to a promise by the seller, their natural tendency would be to induce the purchase, and by the terms of section 1732 of the Civil Code they are an express warranty.

Defendant also contends that an intent to warrant is a "necessary ingredient of an express warranty," citing *Miller* v. *Germain Seed & Plant Co.*, (1924) 193 Cal. 62, 75 [222 Pac. 817], to that effect. That case and others stating the same rule were decided before the adoption of the Uniform Sales Act in this state. Before the drafting of that act there

was much conflict in the decisions in various jurisdictions regarding the necessity for such an intent. (See 2 Mechem on Sales, (1901) § 1237.) The uniform act (Civ. Code, § 1732) does not purport to require any such intent, and its effect is to dispense with the necessity therefor. (See 1 Williston on Sales, (1924) 2d ed., §§ 199-201. See, also, note to draft of § 12 of the Uniform Sales Act in 1903 Report of American Bar Association, vol. 27, p. 509, by Samuel Williston, and same note attached to § 12 of the final draft of the same act in 1906 Report of American Bar Association, vol. 30, p. 351.) These notes state that the purpose of the act is to dispense with the intent to *warrant* as a necessary ingredient of an express warranty. But if such intent is necessary it need not be stated in express words; it may be inferred from circumstances. (*Miller* v. *Germain Seed & Plant Co., supra.*) The statement of capacity and efficiency is, as the court said of the description of seed in that case, a vital fact to the buyer, and from it and the statement of intended use an intent to warrant is inferred. Moreover, one who executes a contract must be held to intend whatever, on a proper construction, is found to be the legal effect of its provisions.

■ The contract contains this further provision: "All the terms and provisions of the contract between the parties hereto, are fully set out herein, and no agent. . . . is authorized to bind the Company by any . . . warranty . . . not herein expressed. . . ." Defendant refers to this provision as excluding any inference or implication of an intent to warrant and any construction of the previously discussed provision as a warranty. We think it has no such effect. It does not declare that the provisions "fully set out" or "expressed" in the contract are not elliptically stated, or not in need of construction to ascertain their scope and meaning, nor does it prevent any of them from being given their proper effect as thus ascertained.

■ Defendant also argues that the provision in which we find a warranty cannot be so construed because such construction would render it inconsistent with this provision of the contract: "The company agrees, and shall have the right, to repair f.o.b. works where made . . . any portion of the machinery of its own manufacture which within one year after shipment is proven to have been . . . defective as to material, workmanship or design . . . ." Granting that failure of the sifter to operate with the warranted efficiency would be due

to defects of either material, workmanship or design, we see no inconsistency between the warranty and the covenant to repair. The latter may cover many defects which do not result in a breach of the warranty, and also gives the defendant an opportunity to make good its warranty if it can; but if defendant cannot or will not do so, as alleged here, there is nothing about this covenant inconsistent with enforcement of the warranty.

Defendant contends that the judgment must be affirmed because plaintiff did not prove or offer to prove either a breach of warranty or any damage caused thereby. It is true, plaintiff's proof and offers did not cover these matters, but this was because of an understanding had at the trial that before going into them the court would determine whether there was an express warranty, and if it determined there was none, as it did, no further evidence would be received. Soon after the beginning of the trial the court ruled that there could be no implied warranty. Thereafter the proceedings at the trial consisted principally of offers of proof by plaintiff. After these had proceeded for some time a discussion arose between counsel on the question whether the contract contains an express warranty, and the court suggested that this question be submitted on briefs, which was done, and the trial was continued some time for that purpose. At the same time the court said: ". . . counsel have informed the court that if the contract is interpreted to contain an express warranty that there will be several days, variously estimated at from one and a half to four or five days of scientific testimony necessary, so it seems that the more expeditious way of handling the matter would be to brief the question of law in reference to the interpretation of this contract, as to whether or not it contains an express warranty. If the court determines that this contract does contain an express warranty it will be necessary then to have evidence presented on behalf of the plaintiff as to where the express warranty was not fulfilled. If the court determines that there is not an express warranty the plaintiff's action falls and there is no need of such testimony. . . . I am asking for that so if the court determines that there is no express warranty it is understood that judgment will be given for the defendant on the counterclaim, however, if the court determines that there is, as a result of your briefs, an express warranty, then the case will come back for the testimony

which I have referred to.'' This was agreed to by both parties, except that plaintiff's counsel indicated a desire to ''complete some additional matters of proof'' in case of ''an adverse ruling on this particular matter.'' When the trial was resumed the court stated its conclusion that there was no express warranty, the record from which we have just quoted was read, and plaintiff proceeded with further offers of proof on the points last mentioned. Nothing further was said about proof of breach of warranty or of damages, and no objection based on the lack of it was made at the trial. Under these circumstances the question may not now be raised in this court.

■ Defendant further contends that the damages alleged in the complaint are all consequential in nature, and that the plaintiff is barred from recovering such damages by the following provisions of the contract: ''This contract is contingent upon strikes, fires, accidents or other delays unavoidable or beyond the reasonable control of the Company. The Company shall not be held responsible or liable for any loss, damage, detention or delay from any cause beyond its control, or in any event for consequential damages; and the receipt of the machinery by the Purchaser shall constitute a waiver of any and all claims for loss or damage due to any delay.'' This provision constitutes a separate paragraph of the contract, and it is clearly directed at one subject only, that is, delays in performance by defendant that are ''unavoidable or beyond the reasonable control of'' defendant. A breach of warranty is not a delay, nor is it, as far as now appears, beyond the defendant's control. (See *Excelsior Motor etc. Co.* v. *Sound Equipment, Inc.* (C. C. A. 7, 1934), 73 F. (2d) 725, 728.)

The judgment is reversed.

Schauer, P. J., and Shinn, J., concurred.