[L. A. No. 18391. In Bank. Apr. 30, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Appellant, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

[L. A. No. 18396. In Bank. Apr. 30, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Petitioner, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation) et al., Respondents; JOHN HARNISH, Appellant.

Earl Warren, Attorney General, and Mitchell, Silberberg & Knupp for Appellant in L. A. 18391.

Manierre & Cuthbertson for Appellant in L. A. 18396.

Lyman P. Robertson, Henry H. Childress, Guthrie & Darling and Edward R. Young for Respondents.

CARTER, J.—The appeal in the first above numbered cause is taken by the Insurance Commissioner as liquidator and conservator of The Pacific Mutual Life Insurance Company of California, referred to as the old company, from an order of the superior court made on February 14, 1941, setting aside the allowance by the Insurance Commissioner of claims in the liquidation of the old company made by the holders of non-cancellable (hereafter called non-can) insurance policies issued by the old company. The other appeal is by defendant John Harnish, one of such policyholders, from the same order. The latter appellant, in addition to the ground urged for reversal by the Insurance Commissioner urges several others.

The main controversy involves the construction and application of the rehabilitation and reinsurance agreement, dated July 22, 1936, the approval of which by the superior court,

was affirmed by this court in *Carpenter* v. *Pacific Mut. Life Ins. Co.*, 10 Cal.2d 307 [74 P.2d 761]; see also *Carpenter* v. *Pacific Mut. L. Ins. Co.*, 13 Cal.2d 306 [89 P.2d 637]; *Caminetti* v. *Pacific Mut. L. Ins. Co.*, L.A. No. 17678, *post*, p. 344 [139 P.2d 908]. That agreement was ultimately approved by the superior court on December 4, 1936. The Insurance Commissioner had been appointed conservator of the old company. On February 2, 1937, the superior court made an order for liquidation of the old company and appointed the Insurance Commissioner liquidator. In that order it was declared that the holders of unmatured policies of the old company had been warned of the condition of that company; that many of said policyholders had permitted their policies to lapse since July 22, 1936; that the rights and liabilities of the creditors and policyholders shall be fixed as of July 22, 1936; and that notice be published advising all policyholders of the old company to file their claims with the Insurance Commissioner as liquidator within six months after date of the first publication. The first publication was made on May 6, 1937, hence the six months period expired in November, 1937. That order for liquidation was affirmed by this court. (*Carpenter* v. *Pacific Mut. L. Ins. Co.*, 13 Cal.2d 306 [89 P.2d 637].)

The rehabilitation and reinsurance agreement contemplated the formation of a new company, Pacific Mutual Life Insurance Company, the stock of which was to be held by the Insurance Commissioner. Substantially all of the assets of the old company were transferred to the new company and it was to engage in the insurance business assuming the policies of the old company held by such persons as accepted the plan in the manner there provided. The non-can policies were assumed at the same premium, but with reduced benefits. The claims of creditors and non-can policyholders not consenting to the reinsurance by the new company were to be paid from the assets of the old company held by the Insurance Commissioner, and limited payments were to be made thereon by the new company.

Most of the holders of the non-can policies assented to the assumption of their policies by the new company, but some, including appellant Harnish, did not. They permitted their policies to lapse for nonpayment of premiums after July 22, 1936, the effective date of the rehabilitation and reinsurance agreement and plan. Within the six months period permitted for filing claims in the order for liquidation of February 2, 1937, they filed their claims for damages with the

liquidator, Insurance Commissioner, and he allowed them. Upon petition of the new company and a policyholder, the trial court on February 14, 1941, made its order from which the present appeals are taken setting aside the liquidator's allowance of those claims, apparently basing its conclusion on paragraph 24 of the rehabilitation and reinsurance agreement which reads: "Policyholders and policy claimants of the Old Company may elect to accept or reject the reinsurance and assumption hereunder of his policy, contract, or claim at any time within seventy-five (75) days after the entry of the order approving this agreement. The filing with the New Company after the entry of the order of the Court approving the agreement of any claim or proof of loss shall constitute an acceptance of this agreement and a waiver of any right to reject the same. *Any policyholder or policy claimant who shall fail to notify the New Company, in writing, of his rejection within said period shall automatically be deemed to have assented to and become bound by this agreement, and entitled to the benefits hereof.*

"The filing of a claim with the Liquidator shall, unless such claim is withdrawn within seventy-five (75) days after the entry of the order of the Court approving this agreement, be deemed a rejection of such reinsurance and assumption. The New Company may nevertheless, with the consent of the Commissioner, and upon such terms as the New Company in its sole discretion may desire to impose, permit the withdrawal of a rejection whether or not the period for election herein fixed shall have expired, and permit the person so withdrawing his rejection to accept the reinsurance and assumption herein contained.

"Any person electing to accept the reinsurance and assumption herein contained shall thereby be deemed to have entered into a novation with the New Company, and to have released the Old Company from all claims, liabilities, or obligations with respect to his policy or policy claim hereby assumed or reinsured, whether wholly or partially assumed or reinsured." (Emphasis added.)

Inasmuch as the holders of non-can policies here involved did not expressly accept the reinsurance by the new company or reject the same in writing within the seventy-five (75) day period, but filed their claims with the liquidator after the expiration of that time, yet within the six months period, it is asserted that their claims cannot be allowed be-

cause they accepted the reinsurance by their failure to give written notice of rejection; that if they accepted the reinsurance they have no claims for the loss of their policies in the liquidation of the old company. With this contention we do not agree.

The rehabilitation and reinsurance agreement was a part of the plan for adjusting the affairs of the old company to the end that as much as possible of its assets be preserved. The new company was the corporate agency of the Insurance Commissioner as conservator for the purpose of continuing and preserving the business of the old company. (*Carpenter* v. *Pacific Mut. Life Ins. Co.*, 10 Cal.2d 307 [74 P.2d 761].) If the holders of non-can policies in good standing chose to accept the assumption by the new company of their policies, that acceptance would be binding upon them. To enable the new company to be apprised of the policies which it thereby assumed and to insure an orderly and definite method of accomplishing that result, sound business policy required that there be either an acceptance or written rejection within a definite period. If the plan was not rejected it was deemed accepted by the policyholder. In addition to the foregoing, the policyholders had the right to file claims for breach of their policies as a result of the order for liquidation, and those rights were fixed as of July 22, 1936. Hence, it may be said that the holders of non-can policies which had not lapsed had a choice of three courses. They could expressly accept the assumption of their policies by the new company, or fail to reject the assumption, in either of which events they would have accepted insurance with the new company under the limitations stated in the rehabilitation and reinsurance agreement, and lose their right to claim damages for the loss of their policies resulting from the liquidation of the old company. If they did not accept the plan, they could file their claims with the liquidator, the time for the doing of which extended beyond the period of acceptance or rejection. The option was given and was for the benefit of the policyholders. Paragraph 24 must be construed in the light of that factor.

▉ Acceptance by failure to reject in writing or express acceptance were not the only methods of exercising that option, when the rights of holders of lapsed policies, here in question are involved. They are placed in a special category, and reasonably so, inasmuch as when a policy has lapsed the in-

surance may be said to be suspended during the period that the right of reinstatement exists. ▆ During the lapse the risk is not assumed by the insurer. That right to reinstatement is, of course, a valuable contractual right. (*Kennedy* v. *Occidental Life Insurance Co.*, 18 Cal.2d 627 [117 P.2d 3].) ▆ That right is protected, and it is also clearly indicated that lapsed policies with that right are in a special category by paragraph 4 of the agreement. It reads: ''The New Company will reinstate any policies heretofore issued, assumed, or reissued by the Old· Company, . . . which at *the effective date of this agreement, (July 22, 1936)* by their terms, were entitled to reinstatement, provided that all requirements necessary to procure a reinstatement of said policies under their *terms* are fulfilled to the satisfaction of the New Company.

''The New Company will *also* reinstate, during the lifetime of the insured and provided the insured is not in such condition as to·be eligible for benefits under the policy, *without evidence of insurability,* any of the policies . . . which have lapsed since the effectivè date of this agreement, *upon written application therefor by the insured and the payment of all premiums in arrears, if such application is made and premiums are paid within seventy-five (75) days after the entry of the order of the Court approving this agreement.* Upon the reinstatement of such lapsed policy it shall, for all purposes, be treated (but only from and after the date of reinstatement) the same as if it had been in force on the effective date of this agreement and be subject to the terms and conditions of this agreement.'' (Emphasis added.) Assuming the first sentence of the foregoing secures the right of reinstatement to all policyholders whose policies provide for reinstatement, whether the lapse occurred prior to or since July 22, 1936, if compliance is had with the terms of the policies with respect to reinstatement, and that a more liberal and additional right to reinstatement is given to the holders of policies which lapsed since July 22, 1936, the fact remains that such lapsed policyholders occupy a special status in regard to whether an acceptance of insurance in the new company results from failure to reject it in writing. If the holder of a policy which had lapsed either before or after July 22, 1936, desired to be reinstated under the first sentence he would be required, under the terms of the policy, to apply therefor, pay the premiums and supply evidence of insur-

ability satisfactory to the insurer within six months from the date of default in the premium. That time might elapse before or after February 20, 1936, the date of the expiration of the seventy-five days in which the reinsurance could be accepted or rejected. The rights in that respect are peculiar to the holders of lapsed policies. The option lies with them. A failure to reject in writing the reinsurance agreement should not debar them from claiming damages because an election in that manner does not give them insurance in the new company except upon the condition that they give satisfactory evidence of insurability. An inability to comply with that requirement would result in the loss of the right to claim damages, if it be said they have accepted the reinsurance agreement and thus waived damages. It is not to be supposed that any such result was intended by the wording of paragraph 24 of the agreement. The only reasonable interpretation is that they be entitled to insurance in the new company by way of reinstatement, upon application, payment of premiums, and establishing insurability within the six months period specified in the policy; that while reinstatement forecloses their right to a claim for damages, a failure to give written notice of rejection within the seventy-five days will not, and that their claim is allowable if made in the time and manner required.

In regard to policies which have lapsed since July 22, 1936, under the second sentence of paragraph 4, the same reasoning applies. They may obtain reinstatement at any time within seventy-five days by application and payment of premiums without establishing insurability if they are not then entitled to benefits.

In both cases the policy underlying the automatic acceptance clause of paragraph 24 will be satisfied, inequitable results will be avoided, and the right to claim damages will be preserved and protected. The new company presumptively should be able to ascertain from the records the date of the lapse of the policies and when the time will expire for reinstatement under the terms of the policies. Under the second sentence of paragraph 4, the reinstatement application must have been filed before the expiration of the seventy-five days. An important factor in interpreting the foregoing agreement is the background of the entire proceeding. The rehabilitation and reinsurance agreement was really a declaration of a part

of a plan to adequately secure and safeguard the rights of all policyholders and creditors. The parties to the agreement were the Insurance Commissioner as conservator of the old company, and the new company, which was under the control of the commissioner, inasmuch as it was his corporate agency to accomplish the desired results, and he held all of the stock therein. The interests of all must therefore be fully protected. No interpretation should be adopted which will frustrate that purpose or deny the right to allow claims rather than accepting new insurance. It is not an agreement between two persons dealing at arms length, but rather a plan for accomplishing beneficial results for all.

If it be assumed that the proper construction of paragraph 4 is that the first sentence applies only to policies which have lapsed prior to July 22, 1936, and that the second sentence applies only to policies lapsing since that time, and in that event no reinstatement right under the policy exists, but is governed solely by that agreement, the foregoing reasoning is even more persuasive. As to policies lapsing since July 22, 1936, compliance must be had with the second sentence, which would mean that failure to apply for reinstatement and payment of the premiums within the seventy-five days, would leave the policyholders without any insurance in the new company. Hence, their method of rejection of the new insurance would be a failure to apply for reinstatement, a matter of which the new company would be aware within the seventy-five days. They would be wholly deprived of a real exercise of an option to accept the assumption if failure to give written notice of rejection accomplished that result, because the new company would not grant new insurance if there had been no reinstatement. By their failure to reject they would be accepting and receiving nothing. Obviously, such results could not have been intended.

Respondent urges that the foregoing construction gives a different meaning to the word ''policyholders'' as used in the first sentence of paragraph 24, than when used in the third sentence dealing with acceptance by failure to reject in writing. That does not necessarily follow. The first sentence gives the option of rejection or acceptance to all policyholders, lapsed or not lapsed. The third sentence deals with the manner of manifesting the acceptance or rejection. Under either sentence the holders of lapsed policies are in a special class

86

inasmuch as their right to accept or reject the insurance assumption by the new company, under the first sentence, is qualified in that the requirements for reinstatement must be met. True, the assumption commenced as of the effective date of the agreement, but it was subject to the requirements necessary to accomplish reinstatement where policies had lapsed.

Respondents argue that there are holders of policies which lapsed after July 22, 1936, but which were reinstated, pursuant to the terms of their policies, by the new company after the expiration of the seventy-five day period; that the new company passed a resolution to not issue non-can policies; that under the foregoing interpretation of paragraph 4 in aid of the construction of paragraph 24, the new company could not legally reinstate policies after the seventy-five day period, hence, such construction should not be given to paragraph 4 inasmuch as it would jeopardize the interests of those policyholders. The reasoning heretofore advanced is, however, that the new company could under the agreement have refused reinstatement after the seventy-five day period if paragraph 4 were given the above-mentioned interpretation. That does not mean that under proper circumstances the new company could not accept a late application for reinstatement. Whether it is now bound by such acceptance is not here involved.

It is urged that because many of the holders of lapsed policies did not file claims they will be unfairly treated. They would be much more unfairly treated under respondents' interpretation of paragraph 24 which would result in neither reinsurance nor the right to file claims.

Under our interpretation of the rehabilitation and reinsurance agreement, there will be no preference given to holders of non-can policies who filed claims with the liquidator. These general claims are to be paid from the assets of the old company held by the liquidator, and by the new company subject to certain contingencies. Paragraph 15 of the agreement referred to by respondent as requiring the new company to pay in *full* all claims, refers only to such items as current expenses, taxes, and the like. It particularly excludes policy claimants. Other provisions of the agreement provide for payment of those claimants.

It is contended by respondent that letters from the

Insurance Commissioner sent to policyholders advising them that they would be able to file a claim with him as liquidator *provided they had given written notice of rejection to the new company,* constituted a construction placed upon the agreement by the parties contrary to the foregoing discussion, and that such interpretation is controlling, citing *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740 [47 P.2d 273]. However, the letter goes on to state that definite action by the policyholder is desirable prior to the expiration of the seventy-five days, and that inaction *may* result in loss of both the right to reinsurance and to file a claim. It did not constitute an unequivocal position on the part of the commissioner contrary to his present stand. Such a letter should not compel the conclusion that the policyholders here involved should lose their right to file claims when all the circumstances are considered together in view of the commissioner's duty to all policyholders.

Inasmuch as a reversal is required for the reasons above stated, it becomes unnecessary to discuss the other grounds urged by appellant Harnish for a reversal of the same order.

The order from which the appeal is taken is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred. Edmonds, J., and Schauer, J., did not participate herein.

Respondents' petition for a rehearing was denied May 27, 1943.