[L. A. No. 18395. In Bank. Oct. 25, 1943.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation) et al., Defendants; GEORGE W. MANIERRE et al., Appellants.

Manierre & Cuthbertson for Appellants.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, John L. Nourse, Deputy Attorney General, Mitchell, Silberberg & Knupp, Peery Price, Special Counsel, Lyman P. Robertson and Henry H. Childress for Respondent.

CARTER, J.—Appellants in this case were the holders of noncancellable (non-can) disability insurance policies issued by The Pacific Mutual Life Insurance Company of California, called the old company. They belong to the same general group of "non-can" policyholders referred to in the case of *Caminetti* v. *Pacific Mutual etc. Co.*, 22 Cal.2d 77 [136 P.2d 779]. They gave notice of rejection of the reinsurance offered by Pacific Mutual Life Insurance Company, the new company, in conformity with the rehabilitation and reinsurance agreement and plan discussed in the above-cited case, and within

the proper time filed their claims for damages with the Insurance Commissioner as liquidator of the old company pursuant to the order for liquidation referred to in the above-cited case. Their claims being allowed for a lesser sum than demanded, they petitioned the superior court under section 1032 of the Insurance Code to test the validity of the commissioner's allowance. They were denied relief and now appeal. Appellants' insurance policies were in full force and effect and all premiums had been paid on July 22, 1936, the date as of which their right to damages was fixed.

According to the bill of exceptions, appellants' (petitioners') petition requested the issuance of an order to the commissioner to show cause why their claims should not be allowed in full. They named the new company and the commissioner as parties. The petition charged that they had been prejudiced by the application of an erroneous measure of damages. The order to show cause was issued and came on for hearing. Counsel for the commissioner stated that pursuant to the suggestion of the court conferences had been held between counsel for the parties from which it appeared that the principal point of disagreement was the proper measure of damages to apply to certain facts; that agreement had been reached as to some facts including the information disclosed by the records of the old company and its underwriting and claims experience, but they could not agree upon the evidence appellants claimed to be available to establish the price at which appellants might have obtained equivalent policies in another company within a reasonable time after July 22, 1936, nor whether any company regularly issued similar policies. It was stipulated that counsel for each party would express his views of the proper legal measure of damages, and what he would be able to prove in support thereof, and upon the determination of the court as to the correct measure, the parties could present such evidence as they desired. Thereupon, counsel for the commissioner made a statement of facts and the law relied upon by the commissioner. He stated that the correct measure was the difference between the premiums that would have been paid under all the "non-can" policies and the benefits that would have been payable thereunder, except for the insolvency, each calculated at its present value, those factors being based upon the past experience of the old company and other data; that each policyholder would be entitled to his share of the total difference.

This might be called the theory of averages or probabilities. He stated that: "The *Commissioner has* therefore taken the difference between these two figures for each policyholder on the basis of his attained age on July 22, 1936, as the measure of the damages for such policyholder. . . .

"In *making this computation, we have computed* when the disability payments would, on the basis of past experience, have been made in the future. These would have been paid over a number of years. We have discounted these payments to their present value, computing such an amount as, if put at simple interest at seven per cent, would permit the future payments at the times when it is computed they would have been payable, and there has also been deducted the premiums which such policyholders would have been compelled to pay to keep their policies in effect, also discounted to their present worth on a similar seven per cent simple interest basis. *By following this theory and this method the Commissioner has computed that petitioner George W. Manierre would be entitled to $1411.23 and* petitioner Victor Levine would be entitled to $246.41 (the amounts allowed by the commissioner)." (Emphasis added.)

Counsel for the new company then stated its theory of the measure of damages as being the return of the unearned portion of the last premium paid. No appeal was taken by the new company.

Counsel for appellants stated their theory to be the reasonable replacement cost of the insurance, that is, the cost of obtaining similar insurance in another company from July 22, 1936, to the maturity specified in the old policy. The court then rendered an oral opinion "that the measure of damages advanced by the Insurance Commissioner and used by him in the computation of the damages allowed to the petitioners . . . (appellants) was the proper legal measure of damages." Thereupon, appellants made an offer to prove by testimony of actuarial experts the replacement value of appellants' policies, supported by a comparison with similar policies of other insurance companies, experience tables computed by companies showing similar insurance, and experience of the old company; and testimony of investment experts that a reasonable rate of interest for investments is $3\frac{1}{2}\%$. Counsel for the commissioner objected to the offer on various grounds including its failure to show what, if any, policies similar to those of appellants were available. The

objection was sustained and appellants rested. The court dismissed the petition.

It is contended by respondent that the objection to the offer of proof was properly sustained because of various deficiencies therein; that neither the ruling on the offer of proof nor the oral opinion of the court that the commissioner had adopted the correct measure of damages prevented appellants from presenting any evidence; that hence the issue of the measure of damages is not before this court.

Such contention is untenable. The rule applicable under the circumstances here presented is that where an entire class of evidence has been formally declared inadmissible by the trial court or the court has clearly intimated that it will receive no evidence on the subject, a specific offer of proof is not necessary before error in the exclusion of such evidence may be claimed on appeal. An offer under those circumstances would be an idle gesture. Also, where the issues are limited by the trial court, and no evidence is to be received upon the excluded issues, no offer of proof on the latter is necessary in order to urge error on appeal. (See *Mebius & Drescher Co.* v. *Mills*, 150 Cal. 229 [88 P. 917]; *Pastene* v. *Pardini*, 135 Cal. 431 [67 P. 681]; *Ballsun* v. *Star Petroleum Co.*, 105 Cal.App. 679 [288 P. 437]; *San Joaquin L. & P. Co.* v. *Barlow*, 43 Cal.App. 241 [184 P. 899]; *Mahoney* v. *Atchison etc. Ry. Co.*, 101 Cal.App. 652 [281 P. 1108]; *People* v. *Duane*, 21 Cal.2d 71 [130 P.2d 123]; *Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.*, 51 Cal.App.2d 520 [125 P.2d 113]; Wigmore on Evidence, vol. 1, sec. 17; 64 C.J. 123.) In the instant case it was conceded that the main issue was the proper measure of damages. The facts with relation to the validity and standing of appellants' policies, the filing of a claim for damages, and its allowance in part, and all the other factors except the issue of the measure and amount of damages were conceded by stipulation. It was understood that counsel for the respective parties would in argument express their views on the correct measure of damages, and what they expected to prove if the court would receive evidence; that following the "*conclusion*" of the court on the legal measure, the parties might present such evidence as they desired. Obviously, the evidence contemplated was that which would conform to the measure selected by the court rather than evidence bearing upon or pertinent to some other measure. In presenting his theory based upon averages or proba-

bilities counsel for the commissioner positively stated that in computing the damages allowed to appellants that measure had been used by the commissioner. After the parties had each presented his theory of the proper measure of damages and counsel for the commission had stated the measure used by the commissioner, the court formally and positively ruled that the theory advanced and used by the commissioner was the proper and legal measure. It would have been idle for appellants to have presented any evidence which bore relation to any measure other than that used by the commissioner. No offer of proof was necessary except possibly in the event appellants wished to attack the correctness of the computation made by the commissioner, conceding the measure used by him was proper. Hence, we are not impressed with respondent's claim of the insufficiency of appellants' offer of proof. The court had ruled in advance that no evidence on any other measure would be received. Appellants' offer of proof patently was aimed at the measure of damages contended for by them. It was made after they had clearly set forth their theory in their argument and stated that there would be produced ''Testimony of actuarial experts establishing that the replacement value of Mr. Manierre's policy, as of July 22, 1936, requires an annual premium of $650.00 for the balance of the policy period of some eight and one-half years, showing total damages, after computing present value of premiums payable in the future, of $3,749.91. This testimony will·be supported by: (a) A comparison with similar non-can disability policies of the Massachusetts Indemnity Company and other companies.'' The argument and offer clearly manifested the theory upon which appellants were relying even if the form of the offer was not technically sufficient. The ruling of the trial court effectively prevented them from having a hearing on the merits of the case, and they have suffered prejudicial injury, if the measure of damages adopted by the trial court was incorrect. The trial court's adoption of the commissioner's theory left appellants with no opportunity to show that under their theory the amount allowable would be more than that allowed by the commissioner, and whether they could so show would have to be ascertained from the evidence rather than a mere offer of proof. Their offer did state that to replace the policies would cost substantially more than the commissioner allowed. Although respondent's objection to appellant's offer of proof did not include the

ground that it was based upon an incorrect measure of damages, the prior ruling of the court clearly indicates that it sustained the objection on that ground.

It is no answer to the foregoing conclusion that appellants produced no evidence that policies similar to those held by appellants were obtainable from other companies. That would be a factor in proving the damages under appellants' theory, but as we have seen they were prevented from proving any facts which related to their theory or any theory other than that adopted by the commissioner and the court.

The insurance policies held by appellants provide for the payment of benefits for the loss of life (as to appellant Manierre) through accidental means within a fixed time after an injury, and for disability resulting from sickness or injury during the term of the policies, and that the insured has the right to renew it from year to year by the payment of annual premiums, until a certain time, that is, as to appellant Manierre, until he reaches 66 years of age, and as to appellant Levine, for 20 years.

The insolvency of the insurer, the old company, resulted in a termination of the policies inasmuch as it is no longer in a position to perform thereunder. The insolvency of the insurer is tantamount to a breach of the policy furnishing the basis for a claim for damages by the insured as a creditor of the insurer. (*Central Trust Co.* v. *Chicago Auditorium Assn.*, 240 U.S. 581 [36 S.Ct. 412, 60 L.Ed. 811]; 29 Am.Jur., Insurance, sec. 71; 106 A.L.R. 1513.)

The new company argues in its brief amicus curiae that the only claim which appellants are entitled to make is for the unearned premium for the portion of the year in which the insolvency of the insurer occurred; that that result is required by the rule that the fact that damages will be suffered as distinguished from the amount thereof must be certain; and that in the instant case whether or not damages will be suffered depends upon contingencies which may never occur such as that the insured may never become disabled during the term of his policy, that he will keep the premiums paid, and that he may die before the term of his policy expires. The effect of that argument would be to render wholly valueless the noncancellable feature of the policy, a definite and concrete promise of the insurer. The courts are not so impotent that they will permit a total loss of such a right merely because of a claimed uncertainty or difficulty

in determining the extent to which the insured may be damaged by the breach of the promise. The rule has been stated as follows: "Where a right to a promised performance is conditional upon the happening of some fortuitous event, the promisee can recover damages measured by the value of the conditional right at the time of breach, (a) if it is impossible to determine with reasonable certainty whether or not the event would have occurred if there had been no breach; or (b) if the breach causes the injured party reasonably to make a new contract for the assumption of the same risk by another contractor." (Rest. Contracts, sec. 332.) ▮▮▮ The insured, the promisee, has a valuable contract right in a chance. One of the chief features of disability insurance is the *protection* afforded to the insured against the financial effects of the possible occurrence of the contingencies. Where the covenant is to continue the protection for a definite term, the right is the more valuable. If that right has no value then such insurance had no value where the term expired without the insured's being disabled, and the premiums paid would have purchased nothing. Of course, the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged. (Civ. Code, sec. 3283.) And the nature of the damages should be ascertainable. (Civ. Code, sec. 3301.) In considering damages in cases similar to breach by anticipatory repudiation there are usually uncertainties as to what will transpire, and probabilities must be substituted for certainties. (See *Standard Oil Co.* v. *Siraco*, 226 App.Div. 266 [235 N.Y.S. 1]; *Goldfarb* v. *Campe Corp.*, 99 Misc. 475 [164 N.Y.S. 583]; Williston on Contracts (rev. ed.), sec. 1397.) ▮▮▮ It is a question of the degree of proof necessary to establish with reasonable certainty that damage will result. If the proof does establish with reasonable certainty that future damages will result from the wrong then they may be allowed. (Williston, Contracts, rev. ed., sec. 1346; *Meyers* v. *Nolan*, 18 Cal.App.2d 319 [63 P.2d 1216]; see *Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576 [81 P.2d 894].) ▮▮▮ Although it may be that in the majority of disability policies the insured will not become disabled, hence, the insurer will not be required to make any payments, the fact remains that he may be disabled and the very purpose of an insurance contract is to give him protection against that possibility. The same comment is applicable to fire insurance contracts. If the value of that protection may be proved

directly or by circumstances establishing the reasonable equivalent thereof, there should be no obstacle to recovery.

The wrongful cancellation of a contract of insurance under the certain circumstances is somewhat analogous to a breach by anticipatory repudiation. In the instant case the old company is insolvent and is being liquidated. It cannot perform under the noncancellable policies it had issued. They have been in effect cancelled. The situation is thus analogous to a breach by anticipatory repudiation. Anticipatory breach is recognized in California. (6 Cal.Jur. 457.) Upon the repudiation the promisee may immediately bring an action for future damages. (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service,* 217 Cal. 131 [17 P.2d 712]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154].) And "It is true that in most cases the determination of future damage is surrounded with many difficulties, but it hardly rests with defendant to complain of such difficulties, since they exist only because of the wrongful act of the defendant, itself. (*Seymour* v. *Oelrichs, supra.*)" (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, supra,* at p. 134.)

The cases of *Cobb* v. *Pacific Mutual Life Ins. Co.,* 4 Cal.2d 565 [51 P.2d 84]; *Brix* v. *Peoples Mutual Life Ins. Co.,* 2 Cal. 2d 446 [41 P.2d 537] and *Robinson* v. *Exempt Fire Co.,* 103 Cal. 1 [36 P. 955, 42 Am.St.Rep. 93, 24 L.R.A. 715], were concerned only with the question of the recovery of the payments that might become due for continuance in the future of the existing disability, as well as payments past due. There was not involved the issue of damages for a total repudiation of the contract of insurance where it is beyond the power of the insurer to respond in the future for future damages.

That the insureds will be damaged in the instant case is clear. They have forever lost the protection against possible loss which was secured to them by their policies. They have lost the chance they had to be specifically benefited by that protection. While it may be true that the majority of the policyholders would in the ordinary course of events pay their premiums but never receive disability payments, yet taken as a group the probabilities based upon actuarial tables and other data may definitely establish as to each policyholder that he had a reasonably certain chance which is of ascertainable value. The fact of the loss may clearly appear. The chief difficulty is the correct method for ascertaining

the value of that contract right, that is, the amount of damages that will be suffered.

 One view with respect to the wrongful repudiation of life insurance policies which has been approved with variations, is that the insured is entitled to recover the premiums he has paid with or without interest thereon, and with or without consideration being given to the value to the insured and loss to the insurer of the coverage of the risk during the period prior to the cancellation of the policy. (Sutherland, Damages, sec. 838; 29 Am.Jur., Insurance, secs. 314, 315; Cooley's Briefs on Insurance, 2d ed., vol. 5, p. 4704; Couch on Insurance, sec. 1870; 48 A.L.R. 107; 107 A.L.R. 1233.) That rule is subject to criticism. Many of the cases supporting this view proceed on the theory that the wrongful repudiation of the policy by the insurer was a rescission of the policy although slight attention was given to whether the insured's conduct in truth established a mutual rescission of the contract. The prevailing thought was to place the parties *in statu quo* when in fact there was no true mutual rescission. In some of the cases the insured's only claim was for a return of the premiums. In many instances no allowance was made to the insurer for the value of the protection afforded during the time prior to the repudiation which, although less in the early years in level premium policies, had some value. The most convincing objection to that measure is that nothing whatever is given for the breach of the noncancellable feature of the policy. The insured receives nothing for the loss of the continued protection against the certain eventuality of death. The same criticism is pertinent to a rule which would allow a recovery of merely the unearned portion of the current premium in a noncancellable disability policy, although the certainty of the occurrence of the contingency is not present.

It has been said generally that the proper measure of damages for the wrongful repudiation by the insurer of a life insurance policy is the value of the policy at the time of cancellation. (Rest., Contracts, sec. 332; Joyce on Insurance, 2d ed., sec. 1454; 29 Am.Jur., Insurance, sec. 316; Couch on Insurance, sec. 1870.) Questions arise as to how the value of the policy is to be determined and what is meant by the term value. In life insurance policies it is sometimes stated that the value is the face value of the policy less the premiums payable, both discounted to their present value.

 The measure advanced by appellants is the cost of similar insurance in another insurer. More accurately stated that rule would be the difference between the total premiums payable under the policy for the life expectancy of the insured computed according to an appropriate rate of interest at its value at the time of cancellation, and the total amount reduced to its present value of premiums that would be required to purchase similar insurance in a solvent company for insured's life expectancy. (See *Mutual Reserve Fund Life Assn.* v. *Ferrenbach,* 144 F. 342 [75 C.C.A. 304, 7 L.R.A.N.S. 1163] ; *Keyser* v. *Mutual Reserve Fund Life Ass'n.,* 60 App.Div. 297 [70 N.Y.S. 32] ; *Speer* v. *Phoenix Mutual Life Ins. Co.,* 36 Hun. (N.Y.) 322; *Conlew, Inc.* v. *Kaufmann,* 269 N.Y. 481 [199 N.E. 767, 770] ; *Federal Life Ins. Co.* v. *Maxam,* 70 Ind.App. 266 [117 N.E. 801] ; *Provident Savings Life Assur. Society* v. *Ellinger,* (Tex.Civ.App.) 164 S.W. 1024; *Illinois Bankers Life Assur. Co.* v. *Payne,* (Tex.Civ.App.) 62 S.W.2d 315; *Latta* v. *Sovereign Camp, W. O. W.,* 179 S.C. 376 [184 S.E. 157] ; *Pack* v. *Metropolitan Life Ins. Co.,* 178 S.C. 272 [182 S.E. 747] ; *Pinckney* v. *American Workmen,* 196 S.C. 446 [14 S.E.2d 273] ; *Franklin* v. *Northern Life Ins. Co.,* 4 Wn.2d 541 [104 P.2d 310].) If the insured is no longer insurable then he may recover the face value of the policy less the premiums payable during his life expectancy, each reduced to its value at the time of cancellation. (See authorities cited *supra.*)

It is not a serious objection to the replacement rule that the estimated period of the life expectancy of the insured probably will not exactly fix the time of his death (it will be more likely not to inasmuch as it is based on average and the person would have to be the exact average) because it is based upon reasonable probabilities which is sufficient in the absence of the availability of better proof. It is probably true that under a level premium policy, the cost of insurance in a different company would be to some extent out of proportion with the premiums fixed in the policy issued by the repudiating company because the former company would not have had the benefit of the earlier premiums when the insured was younger and when the premiums, being in excess of the risk, were being accumulated to meet the obligation when the risk became greater, but the repudiating insurer has had the advantage and use of premiums that have been paid. It may be impossible to have exact similarity in regard to the

financial responsibility of some other insurer which would carry the insurance, or the features of the policy it would write, but as long as there is a substantial likeness, and the other insurer is solvent, substantial justice will be accomplished.

The foregoing rule is in harmony with section 3358 of the Civil Code which provides that no person may recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance on both sides. Section 10111 of the Insurance Code reads: ''In life or disability insurance, the only measure of liability and ·damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto.'' Assuming, but not deciding, that that section is applicable to the instant case, it adds little if anything to section 3358 of the Civil Code. The insured is enabled to place himself in the same position he would have been in if his insurance policy had not been cancelled by receiving sufficient to obtain similar insurance, and the insurer is receiving credit for the premiums it would have received if the policy had continued in force.

However, the difficulties with the application of the replacement measure where disability policies rather than life policies are involved, and the insurer is *insolvent,* are apparent. The insured may or may not be acceptable as a risk by any other insurer, although he does not qualify for benefits under the cancelled policy. It may be that similar insurance in another company is not available. In the case of a life policy the measure may be altered to cover such a situation. The insured may be awarded the face amount of his policy less the premiums payable for his life expectancy, each computed at its present value. But there is no fixed amount to be paid in any event in a disability policy. Where the company is insolvent and there are many policyholders, the difficulty of determining whether or not each insured is still an insurable risk would be practically insurmountable. ·That factor is indicated in *People* v. *Security Life Insurance & Annuity Co.,* 78 N.Y. 114, 126 [34 Am.St.Rep. 522], where the court said:

''But the·health of a policy-holder may since his insurance have become so impaired that his life is not now reinsurable, and hence in his particular case the value to be arrived at upon this basis would not be the measure of his damage. But

yet I am inclined to think that even in such cases the basis would have to be generally adhered to, for the reasons stated by Lord Cairns in Lancaster's Case, to be found in a note to Holdich's Case above cited, because it would be wholly impracticable in the cases of thousands of policyholders to determine the state of health for re-insurance of each policyholder, compared with his state of health at the date of his policy.'' Whether in the instant case there are many or few holders of ''non-can'' disability policies who filed claims rather than accept new policies in the new company is not significant. A definite and uniform rule for the measure of damages when an insurer becomes insolvent is necessary. In order that the plan adopted for the liquidation of the old company, the reinsurance by the new company and the payment of the liabilities of the old company may operate uniformly and fairly to all concerned, all ''non-can'' disability policyholders who did not choose to accept policies in the new company should be treated the same.

The measure of damages used by the commissioner is that there be ascertained from actuarial tables, the past experience of the old company, the age and life expectancy and other data, the probable amount of benefits which would have been payable in the future, except for the insolvency, to all holders of ''non-can'' disability policies, and the amount of premiums that would have been received from that group in the future except for the insolvency of the old company. Both of these amounts are discounted to their present value at 7 per cent simple interest and the latter subtracted from the former. That amount is apportioned among the policyholders in accordance with their number, and the amount so apportioned is the damages. In that manner the amount received would be the value of their policies, that is, the value of the chance, based upon reasonable probabilities which is the essence of the insurance business. It may be expressed in another way. It is each policyholder's share of the reserve. The reserve, viewed prospectively at any particular time, is the amount discounted at appropriate rates of interest to its value at that time, which will be required to meet the claims under the policies in the future. This view finds support in insolvency cases of life insurers. (See *People* v. *Security Life Insurance & Annuity Co., supra;* and *Commonwealth* v. *American Life Ins. Co.,* 162 Pa.St. 586 [29 A. 660, 42 Am.St.

Rep. 844].) In *People* v. *Security Life Insurance & Annuity Co., supra*, at p. 125, it is said:

"What is the damage sustained by each of these policyholders? *Clearly the value of the policy which has been destroyed.* When such value has been ascertained, the true measure of damage has been arrived at. But the difficulty is to determine the value. In any given case, the precise value cannot be ascertained. If the time of death were certain and the rate of interest determined, there would be no difficulty. Then the present value of the amount to be paid at death, diminished by the amount of the present value of all the premiums to be paid would give the value. But the time of death is uncertain, and hence the present value of a running policy must always be somewhat speculative and uncertain. Yet, as in all cases of difficulty, the courts charged with the duty of ascertaining value must take the best light the nature of the case admits. To persons of a certain age there is an average expectancy of life; and this is shown in certain tables used in the business of life insurance showing the expectancy of life for persons of all ages. These tables are built upon long and varied experience and are deemed sufficiently reliable, in the absence of a better basis, for the guidance of the courts, of public officers and of insurers. One of such tables is annexed to the Act, Chapter 623 of the Laws of 1868, and that is the table used by the referee in this case. As before stated, the annual premiums are not the consideration of insurance for the year in which they are paid; for they are equal in amount, whereas the risk in the early years of life is much less than in the later. *Therefore during the early years, the assured has paid more than sufficient to carry the risk during those years; and this excess is to aid in carrying the risk during the later years when the annual premiums would be insufficient for such years. This excess is called the equitable value of the policy and goes to make up what is called the reserve fund.* This reserve, together with the same annual premiums, ought to be sufficient to enable the assured to obtain a policy for the remainder of his life for the same amount in another solvent company, and hence may be taken as the measure of present value, assuming that there has been no change in the value of his life since his insurance, except that caused by the efflux of time." (Emphasis added.)

Life insurance policies are usually level premium policies in which the early premiums are in excess of the risk and

later premiums are less than the risk. Although the risk incident to the accident feature of the disability policy may not increase with age (see *Henricks* v. *Metropolitan Life Ins. Co.*, 7 Cal.2d 619 [61 P.2d 1162]), it may fairly be assumed that it will with respect to illness. Hence, they are level premium policies.

For the foregoing reasons we believe that the measure of damages adopted by the commissioner is the correct measure of the amount to be allowed disability policyholders of the character involved where the insurer becomes insolvent. We do not express any views with respect to the proper measure to be used in life or disability policies where the insurer has repudiated a policy but is not prevented by insolvency from being compelled to continue the insurance.

The orders from which the appeal is taken are affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Traynor, J., and Schauer, J., concurred.

Edmonds, J., did not participate.